UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ALFRED T. GIULIANO, Chapter 7 Trustee of the Ritz Estate; CPM Electronics Inc.; and E.S.E. Electronics, Inc.; on Behalf of Themselves and All Others Similarly Situated, | Case No:  C 10-02787 SBA **ORDER** Docket 158, 205, 207, 211, 212 |
| Plaintiffs, | |
| vs. | |
| SANDISK CORPORATION, | |
| Defendant. | |

Plaintiffs bring the instant putative class action against SanDisk Corporation ("SanDisk") alleging one claim for relief under § 2 of the Sherman Antitrust Act ("Sherman Act"), 15 U.S.C. § 2.  The parties are presently before the Court on Plaintiffs' motion for leave to file the fourth amended complaint ("4AC") and motion to modify the order for pretrial preparation ("Scheduling Order") to file the 4AC as modified.[1]  SanDisk opposes the motions and has filed a motion to dismiss for lack of subject matter jurisdiction.  Also before the Court are non-party SK Hynix America, Inc.'s ("SKHA") motions for relief from nondispositive pretrial orders issued by Magistrate Judge Jacqueline Scott Corley ("the magistrate").  Having read and considered the papers filed in connection with these matters and being fully informed, the Court hereby DENIES SanDisk's motion to dismiss,

---

[1] After Plaintiffs filed their motion for leave to file a 4AC, they filed a motion seeking leave to file the 4AC as modified.  Because the deadline for amending the pleadings had passed, Plaintiffs' motion to file the 4AC as modified requests permission to modify the Court's Scheduling Order under Rule 16 of the Federal Rules of Civil Procedure.

GRANTS Plaintiffs' motion for leave to file the 4AC, DENIES Plaintiffs' motion to modify the Scheduling Order to file the 4AC as modified, and DENIES SKHA's motions for relief from nondispositive pretrial orders issued by the magistrate.  The Court, in its discretion, finds these matters suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I.    DISCUSSION[2]

On June 25, 2010, Ritz Camera & Image, LLC ("Ritz") commenced the instant antitrust action, on behalf of itself and a putative class, alleging claims under § 2 of the Sherman Act.  See Compl., Dkt. 1.  On July 5, 2013, the Court issued an Order substituting Alfred T. Giuliano, Chapter 7 Trustee of the Ritz bankruptcy estate ("the Trustee"), as the named Plaintiff in this action.  Dkt. 138.  On August 1, 2013, a second amended complaint ("SAC") was filed alleging one claim for relief against SanDisk under § 2 of the Sherman Act.  See SAC, Dkt. 143.  On October 8, 2013, a third amended complaint ("TAC") was filed against SanDisk, adding CPM Electronics Inc. ("CPM") and E.S.E. Electronics, Inc. ("ESE") as named Plaintiffs, among other things.  See TAC, Dkt. 150.  In general, the TAC alleges that SanDisk has maintained a monopoly over raw and finished NAND flash memory products[3] that can be imported into or sold in the United States.  Id. ¶ 3.  By this action, Plaintiffs seek to represent a class of persons residing in the United States who, on or after June 25, 2006, directly purchased from SanDisk, or from its controlled and licensed

---

[2] The parties are familiar with the procedural history of this case and the facts alleged in the relevant pleadings.  As such, the Court will only recite the background information that is relevant to resolving the motions pending before the Court.

[3] NAND flash memory is a form of non-volatile erasable memory.  TAC ¶ 1.  It comes in raw and finished forms.  Id. ¶ 2.  "Raw" flash memory is the basic flash memory chip that is produced by a fabrication plant or fab.  Id.  Raw flash memory is incorporated into various "finished" electronic products, including cards, drives, and sticks used in mobile phones, digital cameras, digital video camcorders, gaming devices, portable digital audio/video players, personal computers, and global positioning systems.  Id.  "Finished" NAND flash memory products are products for which NAND flash memory technology is the principal driver of value.  Id.  Such "finished" NAND flash memory products include various forms of flash cards, such as Universal Serial Bus drives, Secure Digital Cards, CompactFlash cards, solid-state drives, and MultiMedia Cards.  Id.

joint venture with Toshiba Corporation, raw and finished NAND flash memory products using technology claimed to be patented by SanDisk.  Id. ¶ 21.

### A.   SanDisk's Motion to Dismiss

SanDisk moves to dismiss this action for lack of subject matter jurisdiction on the ground that Ritz did not have standing at the outset of this litigation to represent a class of direct purchasers of *both* raw and finished NAND flash memory products.  SanDisk argues that dismissal is warranted because the proposed 4AC concedes that Ritz was not a direct purchaser of raw flash memory products.

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed.R.Civ.P. 12(h)(3).  "[S]ubject matter jurisdiction of the district court is not a waivable matter and may be raised at anytime by one of the parties, by motion or in the responsive pleadings, or sua sponte by the trial or reviewing court." Emrich v. Touche Ross & Co., 846 F.2d 1190, 1194 n. 2 (9th Cir. 1988).

It is axiomatic that standing under Article III of the United States Constitution is a threshold requirement in every civil action filed in federal court.  U.S. Const., art. III, § 2, cl. 1; Elk Grove Unified Sch. Dist. v. Newdow, 524 U.S. 1, 11 (2004) ("In every federal case, the party bringing the suit must establish standing to prosecute the action."); Bates v. United Parcel Service, Inc., 511 F.3d 974, 985 (9th Cir. 2007) ("Standing is a threshold matter central to our subject matter jurisdiction.  We must assure ourselves that the constitutional standing requirements are satisfied before proceeding to the merits.").  "A class representative must, in addition to being a member of the class he purports to represent, establish the existence of a case or controversy, i.e., have standing himself to sue."  In re Flash Memory Antitrust Litigation, 2010 WL 2465329, at *3 (N.D. Cal. 2010) (Armstrong, J.) (citing O'Shea v. Littleton, 414 U.S. 488, 494 (1974)).

To establish constitutional standing, a plaintiff must demonstrate that it has personally suffered an injury in fact[4] that is fairly traceable to a defendant's alleged misconduct and is likely to be redressed by a decision in the plaintiff's favor.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-561 (1992).  In a class action, the lead plaintiffs must show that they personally have been injured, "not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  <u>Warth v. Seldin</u>, 422 U.S. 490, 502 (1975).

"A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit."  <u>Cetacean Cmty. v. Bush</u>, 386 F.3d 1169, 1174 (9th Cir. 2004); <u>see</u> <u>Nelsen v. King County</u>, 895 F.2d 1248, 1250 (9th Cir. 1990) ("If the litigant fails to establish standing, he may not 'seek relief on behalf of himself or any other member of the class.' ").  "Standing is determined as of the commencement of litigation."  <u>Biodiversity Legal Foundation v. Badgley</u>, 309 F.3d 1166, 1171 (9th Cir. 2002).  A party lacking Article III standing at the outset of the lawsuit has no power to prosecute the action.  <u>McMichael v. County of Napa</u>, 709 F.2d 1268, 1269 (9th Cir. 1983) ("Before the judicial process may be invoked, a plaintiff must 'show that the facts alleged present the court with a "case or controversy" in the constitutional sense and that [he] is a proper plaintiff to raise the issues sought to be litigated.' ").  "As such, 'a plaintiff may not amend the complaint to substitute a new plaintiff in order to cure a lack of jurisdiction, because a plaintiff may not create jurisdiction by amendment when none exists.' "  <u>In re Flash Memory Antitrust Litigation</u>, 2010 WL 2465329, at *3.

The Court finds that dismissal of the instant action for lack of standing is not appropriate.  From the outset of this litigation, Ritz has alleged that it purchased tens of millions of dollars of flash memory products from SanDisk, and that, due to SanDisk's

---

[4] An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical."  <u>Id.</u> (internal citations and quotation marks omitted).  <u>Lujan</u>, 504 U.S. at 560.

1  monopolization of the relevant market for flash memory products, Ritz paid above-

2  competitive prices for such products in violation of § 2 of the Sherman Act.  See e.g.,

3  Compl. ¶¶ 1-8, 10.  The allegations in the complaint are sufficient to establish Article III

4  standing.  The complaint alleges facts that, if proven, demonstrate that Ritz personally

5  suffered an injury (i.e., monetary damages) caused by SanDisk's alleged misconduct that is

6  capable of remediation by this Court.

7         SanDisk has not cited any authority showing that dismissal of this case for lack of

8  standing is warranted.  In support of its motion, SanDisk relies on this Court's decision in

9  In re Flash Memory Antitrust Litigation.  However, that case is readily distinguishable.

10 There, the Court found that a class representative alleging antitrust violations against flash

11 memory manufacturers did not have standing to maintain the action because he was never a

12 direct purchaser of *any* NAND flash memory.  In re Flash Memory Antitrust Litigation,

13 2010 WL 2465329, at *3.  Here, it is undisputed that Ritz purchased finished flash memory

14 products from SanDisk.  As such, In re Flash Memory Antitrust Litigation does not support

15 dismissal.  In that case, the plaintiff did not purchase any products from the flash memory

16 manufacturers, i.e., he did not suffer an injury.  See id.

17        While the Court has concluded that the complaint alleges sufficient facts to establish

18 that Ritz had standing at the outset of this litigation to assert § 2 Sherman Act claims

19 against SanDisk based on Ritz's purchase of finished NAND flash memory products,

20 SanDisk has raised the issue of whether Ritz had standing to assert § 2 Sherman Act claims

21 based on the purchase of raw NAND flash memory products.  It is undisputed that Ritz did

22 not purchase any raw NAND flash memory products from SanDisk.  According to

23 SanDisk, dismissal is warranted because Ritz lacked standing at the commencement of this

24 action to pursue antitrust claims related to raw NAND flash memory products.

25        In the Ninth Circuit, courts "have diverged on the question of whether a named

26 plaintiff has standing to sue on behalf of purchasers of a product that he or she did not

27 purchase."  See Donohue v. Apple, Inc., 871 F.Supp.2d 913, 921-922 (N.D. Cal. 2012)

28 (collecting cases).  Under these circumstances, the "critical inquiry seems to be whether

there is sufficient similarity between the products purchased and not purchased." <u>See</u> <u>Anderson v. Jamba Juice</u>, 888 F.Supp.2d 1000, 1005-1006 (N.D. Cal. 2012) ("If there is a sufficient similarity between the products, any concerns regarding material differences in the products can be addressed at the class certification stage."). The Court finds that the raw and finished NAND flash memory products are related and that any concerns about the material differences between the products are better addressed at the class certification stage, particularly since the asserted injury to purchasers of both raw and finished NAND flash memory products is predicated on the same alleged wrongful conduct, i.e., SanDisk's conduct in maintaining a monopoly in the relevant market by engaging in various anticompetitive practices, including using fraudulently obtained patents to disadvantage and exclude competition by asserting infringement of such patents.[5] <u>See Donohue</u>, 871 F.Supp.2d at 922 (concluding that plaintiff had standing to bring claims on behalf of persons who purchased different but similar products, reasoning that "questions of whether common issues predominate and whether plaintiff can adequately represent absent class members, [are] issues that are better resolved at the class certification stage."); <u>Bruno v. Quten Research Inst., LLC</u>, 280 F.R.D. 524, 530 (C.D. Cal. 2011) (finding that named plaintiff had standing to sue on behalf of purchasers of related products, noting that "treatises and the vast majority of persuasive authority" indicate that the issue of whether a class representative "may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation."); <u>Carideo v. Dell Inc.</u>, 706 F.Supp.2d 1122, 1134 (W.D. Wash. 2010) (finding that plaintiffs had standing regarding products not purchased where plaintiffs pled the same core factual allegations and causes of actions

---

[5] The Court notes that, if certification is granted, the class will include plaintiffs who have purchased raw NAND flash memory products. Because these plaintiffs would have personal standing to assert § 2 Sherman Act claims against SanDisk based on the purchase of raw NAND flash memory products, the Court finds that SanDisk's arguments "boil down to questions of whether common issues predominate and whether plaintiff[s] can adequately represent absent class members, issues that are better resolved at the class certification stage." <u>See Donohue</u>, 871 F.Supp.2d at 922.

regarding the purchased and non-purchased products); <u>In re Tobacco II Cases</u>, 46 Cal.4th 298, 319 (2009) (" 'Representative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.' ") (citing 7AA Wright et al., Federal Practice and Procedure (3d ed. 2005) § 1785.1, at 388-389).  Accordingly, SanDisk's motion to dismiss for lack of subject matter jurisdiction is DENIED.

### B.    Plaintiffs' Motion for Leave to File the 4AC

Plaintiffs request permission to amend the operative complaint to:  (1) add MFLASH, Inc. as a class representative; (2) alter the market definition to allege two relevant markets – one for flash chips (i.e., raw NAND flash memory products) and one for final flash products (i.e., finished NAND flash memory products); (3) separate the Class into (a) a class of direct purchasers of flash chips, and (b) a class of direct purchasers of final flash products; (4) add a claim for attempted monopolization under § 2 of the Sherman Act; and (5) make minor factual or grammatical changes to the TAC.  SanDisk opposes the motion, arguing that Plaintiffs' attempt to amend the operative complaint and "radically alter and expand this case" should be denied for bad faith, undue delay, prejudice, and futility.

### 1.    Legal Standard

Rule 15(a)(2) provides that leave to amend a complaint should be "freely given when justice so requires."  Fed.R.Civ.P. 15(a)(2).  "This policy is to be applied with extreme liberality."  <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1051 (9th Cir. 2003).  "Four factors are commonly used to determine the propriety of a motion for leave to amend.  These are:  bad faith, undue delay, prejudice to the opposing party, and futility of amendment."  <u>Ditto v. McCurdy</u>, 510 F.3d 1070, 1079 (9th Cir. 2007) (citations and internal quotation marks omitted).  The factors are not to be given equal weight.  <u>Eminence Capital</u>, 316 F.3d at 1052.  Prejudice to the opposing party must be given the greatest weight.  <u>Id.</u>  Absent prejudice, or a strong showing of bad faith, undue delay, or futility of

amendment, there exists a presumption under Rule 15(a) in favor of granting leave to amend.  Id.

The party opposing the amendment carries the burden of showing why leave to amend should not be granted.  See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. 1987).  The trial court has discretion to grant or deny leave to amend.  See Cal. v. Neville Chem. Co., 358 F.3d 661, 673 (9th Cir. 2004).

### 2.   Analysis

#### a.   Undue Delay

SanDisk contends that Plaintiffs have unduly delayed in moving for leave to amend to modify their antitrust market allegations.  According to SanDisk, Plaintiffs have known for over three years that such allegations are defective.  In addition, San Disk contends that leave to amend should be denied to the extent Plaintiffs seek permission to add a new claim for attempted monopolization because Plaintiffs have failed to offer an explanation for why they waited over three years to add such a claim.

Undue delay has occurred when a party has filed a motion for leave to amend long after it should have become aware of the information that underlies that motion.  See Jackson v. Bank of Hawaii, 902 F.2d 1385, 1388 (9th Cir. 1990) ("Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.").  While a district court may consider the factor of undue delay, "[u]ndue delay by itself . . . is insufficient to justify denying a motion to amend."  Bowles v. Reade, 198 F.3d 752, 757-758 (9th Cir. 1999).  However, "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action."  Acri v. International Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir. 1986).

The Court finds that SanDisk has failed to demonstrate that Plaintiffs have unduly delayed in moving for leave to amend to modify the antitrust market allegations.  In response to the instant motion, Plaintiffs assert that they seek permission to modify their

antitrust market allegations because, after careful analysis (including an expert's analysis) of the documents produced by SanDisk in discovery, they have concluded that two antitrust markets - a market for flash chips and a market for final flash products - are more plausible than a single antitrust market.  SanDisk, for its part, has not demonstrated that Plaintiffs unduly delayed in seeking leave to amend after receiving the discovery giving rise to the instant motion.  Nor has SanDisk shown that Plaintiffs knew or should have known of the facts giving rise to their proposed amendments earlier (i.e., prior to examining the documents produced in discovery) such that a finding of undue delay is appropriate.  Indeed, it appears that Plaintiffs are simply seeking leave to amend their pleading in light of what they learned through discovery.  See Hynix Semiconductor Inc. v. Rambus Inc., 2008 WL 73689, at *10 n. 13 (N.D. Cal. 2008) ("While some courts have permitted plaintiffs to establish market definitions without expert testimony, . . . that is likely not appropriate in this case because while a technology market is, in the end, just another product market, its contours are difficult to define. . . . Given the complexity of the task, a jury likely cannot conclude that two technologies are 'close substitutes' and hence comprise a relevant technology market without expert testimony.").

The Court further finds that while Plaintiffs have failed to explain why they waited until now to request leave to amend their pleading to allege a claim for attempted monopolization, SanDisk has not demonstrated that Plaintiffs have unduly delayed in seeking to add this claim.  Plaintiffs filed the instant motion within the deadline established by the Court to amend the pleadings, long before the discovery deadline.  As noted above, it appears that Plaintiffs are seeking leave to add this claim in light of what they learned through discovery.  Moreover, even if Plaintiffs have unduly delayed in seeking to add a claim for attempted monopolization, "[u]ndue delay by itself . . . is insufficient to justify denying a motion to amend." Bowles, 198 F.3d at 757-758.

## b.    Prejudice

SanDisk contends that it will suffer prejudice if Plaintiffs are granted leave to amend their pleading because it has spent time and resources preparing to prove that flash memory

chips and finished flash memory products are not part of the same market, and even if they were, SanDisk does not possess monopoly power in that market.  SanDisk further contends that it would be prejudiced if leave to amend is allowed because the proposed amendments will require additional discovery and analysis.

The most critical factor in determining whether to grant leave to amend is prejudice to the opposing party.  Eminence Capital, 316 F.3d at 1052.  Prejudice must be substantial to justify denial of leave to amend.  See Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990); see Hip Hop Beverage Corp. v. RIC Representcoes Importacao e Comercio Ltda., 220 F.R.D. 614, 622 (C.D. Cal. 2003) (" 'Undue prejudice' means substantial prejudice or substantial negative effect; the Ninth Circuit has found such substantial prejudice where the claims sought to be added 'would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense.' ").  The burden of showing prejudice is on the party opposing an amendment to the complaint.  DCD Programs, 833 F.2d at 187.

The Court finds that SanDisk has failed to sustain its burden to demonstrate that it will suffer substantial prejudice if Plaintiffs are granted leave to amend their pleading.  Plaintiffs filed the instant motion within the deadline established by the Court to amend pleadings, approximately nine months before the original deadline for the close of fact discovery.[6]  SanDisk has not identified any specific additional discovery that it will seek if Plaintiffs' motion is granted, let alone shown that any additional discovery that is required could not be completed before the discovery deadline.  See AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 960 (9th Cir. 2006) ("Dialysist West did not contend, and the district court did not find, that any additional discovery that might have been required could not have been completed within the time remaining before the discovery cutoff date.  The need to undertake additional discovery cannot be classified as prejudice so long as ample time remains, as it did in this case, to complete that discovery before the

---

[6] On June 17, 2014, the Court granted the parties' joint stipulation to extend the discovery deadline to November 14, 2014.

discovery cutoff date."); <u>Thermal Controls LLC v. Redwood Industrials</u>, 2009 WL 4907512, at *3 (N.D. Cal. 2009) ("the prospect of additional discovery needed by the non-moving party in itself [does not] constitute a sufficient showing of prejudice").  The Court is not persuaded that SanDisk will suffer substantial prejudice if Plaintiffs' motion is granted.  SanDisk has not shown that the 4AC significantly alters the nature of this litigation.  Indeed, the issues raised in the 4AC are substantially related to the issues contained in the TAC.  The proposed new claim for attempted monopolization overlaps with Plaintiffs' claim for monopolization as both claims involve common proof,[7] and the proposed new plaintiff asserts the same injury as the named Plaintiffs arising out of the same conduct alleged in the previous versions of the complaint.  Moreover, Plaintiffs represent that they will not oppose any request by SanDisk for an extension of the discovery deadline to engage in discovery related to the proposed amendments.

### c.   Futility

SanDisk contends that leave to amend should be denied because Plaintiffs have failed to allege sufficient facts establishing monopoly power in the relevant market.  In addition, SanDisk contends that leave to amend should be denied because Plaintiffs' attempted monopolization claim fails as the 4AC does not allege facts plausibly suggesting a dangerous probability that SanDisk will obtain monopoly power.

"A motion for leave to amend may be denied if it appears to be futile or legally insufficient."  <u>Miller v. Rykoff–Sexton, Inc.</u>, 845 F.2d 209, 214 (9th Cir. 1988).  A proposed amended complaint is futile if it would be immediately subject to dismissal. <u>Nordyke v. King</u>, 644 F.3d 776, 788 n. 12 (9th Cir. 2011).  Thus, the proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6). <u>Id.</u>

---

[7] <u>See Image Tech. Servs. v. Eastman Kodak Co.</u>, 125 F.3d 1195, 1202 (9th Cir. 1999) ("The requirements of a § 2 monopolization claim are similar [to the requirements of a § 2 attempt to monopolize claim], differing primarily in the requisite intent and the necessary level of monopoly power.").

Section 2 of the Sherman Act makes it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states, or with foreign nations."  15 U.S.C. § 2.  All § 2 Sherman Act claims require a plaintiff to adequately plead that the defendant has monopoly power in the relevant market or "a dangerous probability" that the defendant may be able to achieve monopoly power.  See Newcal Indus. v. Ion Office Solution, 513 F.3d 1038, 1044 n. 3 (9th Cir. 2008).  The Supreme Court defines monopoly power as the "power to control prices or exclude competition."  United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 393 (1956).  A plaintiff can show market power directly, by establishing that the defendant, by actually reducing its own output, raised market prices; or indirectly, by showing that the defendant has a dominant share of the market, that there are significant barriers to entry into that market, and that existing competitors cannot increase their production in the short run.  Rebel Oil Co. v. Atl. Richfield Co., 51 F.3d 1421, 1434 (9th Cir. 1995).  Monopoly power need not be pled with specificity, and whether a defendant actually possesses monopoly power is a factual question.  Newcal, 513 F.3d at 1045, 1051; see Cost Mgmt. Servs., Inc. v. Washington Natural Gas Co., 99 F.3d 937, 950 n. 14 (9th Cir. 1996).

The Court has reviewed the allegations in the 4AC and finds that SanDisk has failed to demonstrate that amendment would be futile.  SanDisk has not clearly demonstrated that the 4AC would be subject to immediate dismissal.  While a motion for leave to amend may be denied if it is clear that amendment would be futile, the Court finds that SanDisk's arguments are more appropriately raised in a motion to dismiss or other dispositive motion, not on a Rule 15(a) motion where the governing standard is one of "extreme liberality."  See Netbula, LLC v. Distinct Corp., 212 F.R.D. 534, 539 (N.D. Cal. 2003) ("Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed."); SAEs Getters S.p.A. v. Aeronex, Inc., 219 F.Supp.2d 1081, 1086 (S.D. Cal. 2002) ("While courts will determine the legal sufficiency of a proposed amendment using the same standard as

applied on a Rule 12(b)(6) motion . . . such issues are often more appropriately raised in a motion to dismiss rather than in an opposition to a motion for leave to amend.").

### d.      Bad Faith

In the context of a motion to amend under Rule 15, "bad faith" generally refers to efforts to amend the pleadings late in the litigation in order to obtain an unfair tactical advantage.  See Bonin v. Calderon, 59 F.3d 815, 846 (9th Cir. 1995) (bad faith shown where petitioner sought leave to amend late in the litigation after suffering an adverse ruling); Acri, 781 F.2d at 1398 (amendment disallowed where the delay in amendment was a tactical choice brought specifically to avoid the possibility of an adverse summary judgment ruling).  In its motion, SanDisk does not allege that Plaintiffs are requesting leave to amend in order to obtain a tactical advantage.  Instead, SanDisk contends that Plaintiffs should have amended their pleading earlier.  As discussed above, Plaintiffs filed the instant motion after analyzing documents produced by SanDisk during discovery.  The motion was filed approximately nine months before the original discovery cut-off date.  SanDisk has not proffered any legal analysis showing that Plaintiffs have acted in bad faith in seeking leave to amend.

### e.      Conclusion

In view of the extreme liberality with which the Court must view a motion for leave to amend, the Court concludes that SanDisk has failed to sustain its burden to demonstrate that leave to amend should be denied.  DCD Programs, 833 F.2d at 187.  Accordingly, Plaintiffs' motion for leave to file the 4AC is GRANTED.

### C.      Motion to Modify the Scheduling Order to Allow Leave to File the 4AC as Modified

Plaintiffs move for an order modifying the Court's Scheduling Order to allow for the filing of the 4AC as modified.  Plaintiffs assert that the modified 4AC "merely includes allegations in support of fraudulent concealment - namely that Plaintiffs did not and could not have discovered the existence of their claims through the exercise of reasonable diligence" given the inherently self-concealing nature of the fraud SanDisk committed on

the PTO.  According to Plaintiffs, the only modification to the proposed 4AC is "a completion of the allegation of fraudulent concealment, which has the effect of tolling the statute of limitations on SanDisk's fraudulent conduct," thereby permitting them "to pursue the full measure of their damages caused by SanDisk's conduct."[8]  Plaintiffs contend that "[s]uch a modification would permit the Plaintiffs to start the class period in July 1997, near the beginning of SanDisk's fraud and the time in which it began charging unlawful royalties to supra-competitive prices for NAND flash memory."

### 1.  Legal Standard

Generally, Rule 15(a) liberally allows for amendments to pleadings.  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000).  However, once a court has entered a Rule 16 pretrial scheduling order, consideration of a request to amend is not limited to Rule 15(a) but must first pass muster under Rule 16(b).  See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992).  Rule 16(b) provides that deadlines established in a case management order may "be modified only for good cause[.]" Fed.R.Civ.P. 16(b)(4).  "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."  Johnson, 975 F.2d at 609; Coleman, 232 F.3d at 1294.  "The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.' "  Johnson, 975 F.2d at 609.  Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.  Id.  Where the moving party has not been diligent, the inquiry ends and the motion should be denied.  Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002).  The plaintiffs bear the burden of showing good cause for not having amended their complaint before the time specified in the scheduling order expired.  Coleman, 232 F.3d at 1294.  The decision to modify a scheduling order is within the broad discretion of the

---

[8] Plaintiffs assert that while they have adequately pled facts of the concealed fraud with sufficient specificity to support a fraudulent concealment allegation, they have not pled facts demonstrating their inability to uncover their claims.

1   district court.  <u>Johnson</u>, 975 F.2d at 607.  If good cause is shown, the court proceeds to

2   consider the requirements of Rule 15(a).  <u>Id.</u> at 608

3              **2.     Analysis**

4              Because Plaintiffs filed the instant motion after the deadline to amend the pleadings

5   established by the Court's Scheduling Order, they must first show good cause under Rule

6   16 for their belated filing.  <u>See Johnson</u>, 975 F.2d at 608.  Plaintiffs have failed to do so.

7   Plaintiffs concede that SanDisk's fraud on the PTO "has always been a core part of the

8   complaint," and that "[t]he facts of fraudulent concealment [were] alleged in every prior

9   version of the [c]omplaint."  Plaintiffs, however, provide no explanation for why they

10  waited until approximately five months after the deadline to amend pleadings to request

11  permission to amend their pleading to allege facts showing that they did not and could not

12  have discovered the existence of their claims through the exercise of reasonable diligence.

13  Inexplicably, Plaintiffs have not addressed the issue of diligence in their papers.  Moreover,

14  there is nothing in the record reflecting reasonable diligence on the part of Plaintiffs.

15  Indeed, Plaintiffs admit that they have known about SanDisk's alleged fraud since the

16  inception of this action in 2010, i.e., years before the deadline to amend pleadings.  As

17  such, Plaintiffs have known or should have known of the facts they now seek to allege long

18  before the deadline to amend the pleadings expired.  Accordingly, because Plaintiffs have

19  failed to establish reasonable diligence, their motion to modify the Court's Scheduling

20  Order to allow them to file the 4AC as modified is DENIED.  <u>See Zivkovic</u>, 302 F.3d at

21  1087.  Since the Court declines to exercise its discretion to modify its Scheduling Order, an

22  analysis of the proposed amendments under Rule 15(a) is unnecessary.  <u>See Johnson</u>, 975

23  F.2d at 608 (citing <u>Forstmann v. Culp</u>, 114 F.R.D. 83, 85 (M.D. N.C. 1987) (party seeking

24  to amend pleading after date specified in scheduling order must first show "good cause" for

25  amendment under Rule 16(b), then, if "good cause" is shown, the party must demonstrate

26  that amendment was proper under Rule 15); <u>see also Sosa v. Airprint Systems, Inc.</u>, 133

27  F.3d 1417, 1419 (11th Cir. 1998).

28  ///

**D.      Motions for Relief from Nondispositive Orders issued by the Magistrate**

SKHA filed a timely motion objecting to the magistrate's order granting in part and denying in part Plaintiffs' motion to compel documents from SKHA.  SKHA also filed a timely motion objecting to the magistrate's order denying SKHA's motion for an emergency stay.  SKHA contends that the magistrate erred by failing to place discovery on hold pending the Court's determination as to whether Plaintiffs' lack standing.  Because the Court has denied SanDisk's motion to dismiss for lack of standing, SKHA's motions for relief from nondispositive orders issued by the magistrate are DENIED as moot.

## III.    CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.      SanDisk's motion to dismiss is DENIED.

2.      Plaintiffs' motion for leave to file the 4AC is GRANTED.  Plaintiffs' shall file the proposed 4AC within seven (7) days from the date this Order is filed.

3.      Plaintiffs' motion to modify the Scheduling Order to file the 4AC as modified is DENIED.

4.      SKHA's motions for relief from nondispositive orders issued by the magistrate are DENIED.

5.      This Order terminates Docket 158, 205, 207, 211 and 212.

IT IS SO ORDERED.

Dated:  9/19/2014

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge