1 │ RAOUL D. KENNEDY (Bar No. 40892)
   │ DAVID W. HANSEN (Bar No. 196958)
2 │ JAMES P. SCHAEFER (Bar No. 250417)
   │ IAN CHEN (Bar No. 287778)
3 │ SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   │ 525 University Avenue
4 │ Palo Alto, California 94301-1908
   │ Telephone: (650) 470-4500
5 │ Facsimile: (650) 470-4570
   │ Raoul.Kennedy@skadden.com
6 │ David.Hansen@skadden.com
   │ James.Schaefer@skadden.com
7 │ Ian.Chen@skadden.com

8 │ MICHAEL H. MENITOVE (admitted *pro hac vice*)
   │ SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
9 │ Four Times Square
   │ New York, New York 10036
10 │ Telephone: (212) 735-3000
   │ Facsimile: (212) 735-2000
11 │ Michael.Menitove@skadden.com

12 │ Attorneys for Defendant,
   │ SANDISK CORPORATION
13 │

14 │
   │        UNITED STATES DISTRICT COURT
15 │
   │   FOR THE NORTHERN DISTRICT OF CALIFORNIA
16 │
   │            OAKLAND DIVISION
17 │

18 │ ALFRED T. GIULIANO, Chapter 7 Trustee of        CASE NO. CV 10-02787-SBA
   │ the Ritz Estate, on Behalf of the Ritz Estate;
19 │ CPM Electronics Inc.; E.S.E. Electronics, Inc.,   **DEFENDANT'S NOTICE OF**
   │ and MFLASH, Inc.                                  **MOTION, MOTION AND**
20 │                                                   **MEMORANDUM OF POINTS AND**
   │ On Behalf of Themselves and All Others            **AUTHORITIES IN SUPPORT OF ITS**
21 │ Similarly Situated,                               **MOTION TO EXCLUDE THE**
   │                                                   **SECOND REPORT AND TESTIMONY**
22 │             Plaintiffs,                           **OF PLAINTIFFS' EXPERT DR. RYAN**
   │                                                   **SULLIVAN**
23 │       v.
   │                                                   Hearing Date:      March 10, 2015
24 │ SANDISK CORPORATION,                             Time:              1:00 p.m.
   │                                                   Courtroom:         1, Oakland
25 │             Defendant.                            Judge: Hon. Saundra B. Armstrong

26 │

27 │        REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

28 │
   │ ─────────────────────────────────────────────────────────────────
   │ DEF.'S NOTICE OF MOTION, MOTION AND MEM. ISO OF MOTION TO         CASE NO. CV 10-02787-SBA
   │ EXCLUDE THE SECOND REPORT AND TESTIMONY OF DR. SULLIVAN

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 10, 2015 at 1:00 p.m. in the courtroom of the Honorable Saundra Brown Armstrong, the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, 94612, Defendant SanDisk Corporation ("SanDisk") will move the Court to exclude the second report and testimony of Plaintiffs' expert Dr. Ryan Sullivan.

This motion is made pursuant to Federal Rules of Evidence 402, 403 and 702, as well as *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

SanDisk bases its motion on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the [Proposed] Order, SanDisk's Memorandum of Points and Authorities and Reply Memorandum of Points and Authorities submitted in connection with its pending Motion to Exclude the Report and Testimony of Dr. Sullivan offered in support of Plaintiffs' motion for class certification, any oral argument heard by the Court, the record in this case, such additional evidence as may be submitted to the Court and such other matters as the Court deems proper.

SanDisk certifies that it has complied with the Court's meet and confer requirements and that counsel for Plaintiffs have indicated that they will oppose this motion.

DATED: February 3, 2015          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


By:  _____/s/ James P. Schaefer_____
                 James P. Schaefer

                 Attorneys for Defendant,
                 SANDISK CORPORATION

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

PRELIMINARY STATEMENT ...................................................................... 1

ARGUMENT ........................................................................................ 2

I.   DR. SULLIVAN'S SECOND REPORT REPEATS THE FATAL FLAWS IN HIS
     TESTIMONY OFFERED IN SUPPORT OF CLASS CERTIFICATION ......................... 2

     A.   Because Dr. Sullivan's Regression Analysis Is Inadmissible, His Impact and
          Damages Opinions Should Be Excluded ................................................ 2

     B.   Dr. Sullivan's 100% Pass-Through Assumptions Are Untested, Unsupported
          and Contrary to Economic Theory ...................................................... 4

     C.   Dr. Sullivan Has No Basis To Opine █████████████████████████████████
          ████████████████████████████████████████████████████████ ................. 4

II.  DR. SULLIVAN'S OPINIONS RELATING TO SANDISK'S ALLEGED
     MARKET POWER IN THE PUTATIVE FLASH CHIP MARKET SHOULD BE
     EXCLUDED ...................................................................................... 5

     A.   Dr. Sullivan Provides No Admissible Direct Evidence That SanDisk Had
          Market Power in the Putative Flash Chip Market ..................................... 5

     B.   Dr. Sullivan Provides No Admissible Indirect Evidence That SanDisk Had
          Market Power in the Putative Flash Chip Market ..................................... 6

III. DR. SULLIVAN'S OPINIONS RELATING TO SANDISK'S ALLEGED
     MARKET POWER IN ANY FLASH PRODUCT MARKET SHOULD BE
     EXCLUDED ...................................................................................... 12

     A.   Dr. Sullivan Provides No Admissible Direct Evidence That SanDisk Had
          Market Power in Any Flash Product Market ........................................... 13

     B.   Dr. Sullivan Provides No Admissible Indirect Evidence That SanDisk Had
          Market Power in Any Flash Product Market ........................................... 13

IV.  DR. SULLIVAN'S DAMAGES CALCULATIONS SUFFER FROM
     ADDITIONAL FATAL FLAWS ................................................................. 15

CONCLUSION ...................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Apple, Inc. v. Samsung Electronics Co.,*
2012 WL 2571332 (N.D. Cal. June 30, 2012) .................................................. 5

*Bailey v. Allgas, Inc.,*
148 F. Supp. 2d 1222 (N.D. Ala. 2000), *aff'd*, 284 F.3d 1237 (11th Cir.
2002) ....................................................................................................... 5, 10

*Big Bear Lodging Ass'n v. Snow Summit, Inc.,*
182 F.3d 1096 (9th Cir. 1999) .......................................................................... 6

*Chartier v. Brabender Technologie, Inc.,*
2011 WL 4732940 (D. Mass. Oct. 5, 2011) .................................................... 13

*Church & Dwight Co. v. Mayer Laboratories, Inc.,*
868 F. Supp. 2d 876 (N.D. Cal. 2012), *rev'd in part, vacated in part on other
grounds on reconsideration,* 2012 WL 1745592 (N.D. Cal. May 16, 2012) ......... 5

*Concord Boat Corp. v. Brunswick Corp.,*
207 F.3d 1039 (8th Cir. 2000) ........................................................................ 15

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
509 U.S. 579 (1993) ...................................................................................... 1, 2

*In re Flash Memory Antitrust Litigation,*
2010 WL 2332081 (N.D. Cal. June 9, 2010) ..................................................... 8

*Image Technical Services, Inc. v. Eastman Kodak Co.,*
125 F.3d 1195 (9th Cir. 1997) ........................................................................ 10

*Kentucky Speedway, LLC v. National Ass'n of Stock Car Auto Racing, Inc.,*
588 F.3d 908 (6th Cir. 2009) .................................................................. 7, 8, 14

*L.A. Land Co. v. Brunswick Corp.,*
6 F.3d 1422 (9th Cir. 1993) ............................................................................ 11

*In re Live Concert Antitrust Litigation,*
863 F. Supp. 2d 966 (C.D. Cal. 2012) ........................................................ 7, 14

*McLaughlin Equipment Co. v. Servaas,*
2004 WL 1629603 (S.D. Ind. Feb. 18, 2004) .................................................... 9

*Monsanto Co. v. Scruggs,*
342 F. Supp. 2d 568 (N.D. Miss. 2004), *aff'd*, 459 F.3d 1328 (Fed. Cir.
2006) ............................................................................................................. 10

*Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*,
    924 F.2d 1484 (9th Cir. 1991) ................................................................. 6, 7, 9

*Pilch v. French Hospital*, 2000 WL 33223382 (C.D. Cal. Apr. 28, 2000) ...................... 11

*Rebel Oil Co. v. Atlantic Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) ................................................................. 5, 6, 10, 11

*Southeastern Missouri Hospital v. C.R. Bard, Inc.*,
    642 F.3d 608 (8th Cir. 2011) ........................................................................ 8

*Townshend v. Rockwell Int'l Corp.*,
    55 U.S.P.Q.2d 1011 (N.D. Cal. 2000) .............................................................. 11

*United States v. Oracle Corp.*,
    331 F. Supp. 2d 1098 (N.D. Cal. 2004) ............................................................. 7

*Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*,
    382 U.S. 172 (1965) ...................................................................................... 6

**STATUTES AND RULES**

15 U.S.C. § 2 ...................................................................................................... 10

Fed. R. Evid. 402 ................................................................................................ 1, 2

Fed. R. Evid. 403 ................................................................................................ 1, 2

Fed. R. Evid. 702 ................................................................................................ 1, 2

Fed. R. Evid. 702(a) .............................................................................................. 3

Fed. R. Evid. 702(d) .............................................................................................. 3

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    Pursuant to Federal Rules of Evidence 402, 403 and 702, as well as *Daubert v. Merrell*

3    *Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Defendant SanDisk Corporation ("SanDisk")

4    submits this memorandum in support of its motion to exclude the testimony of Plaintiffs' expert

5    Dr. Ryan Sullivan as set forth in the Second Report of Ryan Sullivan, Ph.D.

6    **PRELIMINARY STATEMENT**

7    Dr. Sullivan's opinions should be excluded for multiple reasons.

8    ***First***, Dr. Sullivan has failed to remedy fatal deficiencies in his analysis that SanDisk

9    identified in connection with its pending motion to exclude his testimony offered in support of

10   Plaintiffs' motion for class certification.  (*See* SanDisk's Motion to Exclude, Dkt. 259 ("Mot.");

11   SanDisk's Reply in Support of Motion to Exclude, Dkt. 267 ("Reply Mot.").)  Most significantly,

12   Dr. Sullivan's regression model is inadmissible because it is incapable of analyzing the relationship

13   he purports to measure—i.e., a relationship ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15   ▮▮▮▮.  Because Dr. Sullivan's impact and damages opinions are based on his regression

16   analysis, those opinions should be excluded for this reason alone.

17   ***Second***, Dr. Sullivan's opinions relating to SanDisk's alleged market power in the putative

18   flash chip market in the United States should be excluded.  Dr. Sullivan opines ▮▮▮▮▮▮▮▮

19   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, but his analysis is contrary to law because he fails to address

20   whether SanDisk restricted marketwide output or charged supracompetitive prices for flash chips.

21   Dr. Sullivan also opines ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22   ▮▮▮▮▮▮▮▮▮▮▮▮▮, but each aspect of his opinion is inadmissible.  Specifically, his

23   market definition analysis should be excluded because he does not reliably employ his chosen

24   methodology:  the small but significant and non-transitory increase in price ("SSNIP") test.  In

25   addition, his analysis of market concentration is contrary to law and unhelpful to the trier of fact.

26   Finally, he fails to analyze barriers to expansion, and his opinion regarding barriers to entry is

27   unsupported and does not fit the facts of the case.

28   ***Third***, the opinion in Dr. Sullivan's report ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1

1   [REDACTED] should be excluded.  Dr. Sullivan's recent deposition testimony

2   contradicts his report.  Specifically, he testified [REDACTED]

3   [REDACTED]

4   [REDACTED] Further, Dr. Sullivan's opinions relating to the alleged flash product markets

5   should be excluded for the same reasons as his opinions regarding the putative flash chip market.

6   ***Fourth***, Dr. Sullivan's damages calculations suffer from additional fatal flaws.  His

7   analysis is based on [REDACTED]

8   [REDACTED]; Dr. Sullivan fails to

9   distinguish between [REDACTED]

10  [REDACTED] included in SanDisk's portfolio licenses with flash chip

11  manufacturers.  In addition, Dr. Sullivan continues to offer inadmissible opinions regarding

12  damages pre-dating the Class Period (beginning on June 25, 2006) and damages based on

13  prejudgment interest.

14  **ARGUMENT**

15          The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and

16  *Daubert*.  (Mot. at 2-3.)  The proponent of expert testimony must establish by a preponderance of

17  the evidence that the testimony is reliable and fits the facts of the case.  (*Id.* at 3.)  To be

18  admissible, expert testimony also must be relevant, and its probative value may not be substantially

19  outweighed by a danger of confusing the issues or misleading the jury.  *See* Fed. R. Evid. 402, 403.

20  **I.      DR. SULLIVAN'S SECOND REPORT REPEATS THE FATAL FLAWS IN HIS**
        **TESTIMONY OFFERED IN SUPPORT OF CLASS CERTIFICATION**

21

22          **A.      Because Dr. Sullivan's Regression Analysis Is Inadmissible, His Impact and**
                **Damages Opinions Should Be Excluded**

23          Dr. Sullivan's opinions regarding impact and damages are based on his regression analysis.

24  (*See, e.g.*, Declaration of Ian Chen In Support of SanDisk's Motion for Summary Judgment and

25  Motion to Exclude the Second Report and Testimony of Plaintiffs' Expert Dr. Sullivan ("Chen

26  Decl.") at Ex. 27 ("Sullivan 2d Rep.") ¶¶ 19(c)-(d), 122-32, 135-38.)  Dr. Sullivan claims that his

27  regression model measures [REDACTED]

28  [REDACTED] (*id.* ¶ 123) and that it purportedly establishes

2

1      ███████████████████████████████████████████ (*Id.* ¶ 129.)

2      As explained in connection with SanDisk's pending motion to exclude Dr. Sullivan's class

3  certification opinions, his regression analysis is inadmissible because it is incapable of measuring

4  ████████████████████████████████████████████████████████ (Mot. at

5  12-13; Reply Mot. at 1-3.)  Dr. Sullivan's model includes ██████████████

6  ███████████████████████████████████████████████████

7  ███████████ but *it is undisputed* that excluding ███████████████—or

8  replacing it with a value equal to 1—*has no impact* on his results.  (Reply Mot. at 1-2; Chen. Decl.

9  at Ex. 33 ("Keeley 2d Rep.") ¶¶ 26-27.)

10     This fatal flaw in Dr. Sullivan's methodology is attributable to a well-recognized error

11  known as "perfect collinearity." ████████████████████████████████████████

12  ████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████

19     Thus, Dr. Sullivan's regression analysis should be excluded because he has not "reliably

20  applied [his] principles and methods to the facts of the case" Fed. R. Evid. 702(d), and the results

21  cannot assist the trier of fact.  *See* Fed. R. Evid. 702(a).  (*See also* Mot. at 13.)  Further, because Dr.

22

---

23  [1] Dr. Sullivan contends that ███████████████████████████████████

24  ██████████████████████████ (Sullivan 2d Rep. at 71 n.312.)  But that is precisely the point; Dr. Keeley has established perfect collinearity by demonstrating that ████████████████

25  ████████████████████ (Keeley 2d Rep. ¶ 27.)

26  [2] Dr. Sullivan argues that ██████████████████████████████████ (Sullivan 2d Rep. at 70 n.310.)  But the fact that SanDisk charged more for higher capacity products lends no support to Plaintiffs' theory—i.e., ████████████

27  ██████████████████████████████████████████. (Keeley 2d Rep. ¶ 26.)

28

DEF.'S NOTICE OF MOTION, MOTION AND MEM. ISO OF MOTION TO     CASE NO.  CV 10-02787-SBA
EXCLUDE THE SECOND REPORT AND TESTIMONY OF DR. SULLIVAN

1    Sullivan's regression model is the basis for his impact and damages opinions, those opinions

2    should be excluded as well.

3        **B.      Dr. Sullivan's 100% Pass-Through Assumptions Are Untested, Unsupported
                    and Contrary to Economic Theory**

4

5            Dr. Sullivan's impact and damages opinions are based on assumptions

6

7            (Reply Mot. at 3-4.)  Dr. Sullivan now acknowledges that

8

9                            (Chen. Decl. at Ex. 28 ("Sullivan Tr.") at 384-85; *see also id.* at 343.)

10           As explained in connection with SanDisk's pending motion, Dr. Sullivan's assumptions are

11   unreliable because they are untested and unsupported by empirical analysis.  (Mot. at 9-11; Reply

12   Mot. at 3-5.)  For example, Dr. Sullivan's assumptions are unsupported by analysis of any SanDisk

13   flash chip licensee's cost or pricing data, nor is there testimony or documentary evidence indicating

14   that SanDisk's flash chip licensees considered royalty payments to SanDisk when setting prices.

15   (Reply Mot. at 4.)  In addition, Dr. Sullivan's assumption

16                                        is contrary to well-established economic theory demonstrating

17   that only royalties affecting marginal costs impact pricing decisions.  (Mot. at 10; *see also* Keeley

18   2d Rep. ¶ 32.)  Moreover, Dr. Sullivan                                              , which

19   did not pay royalties to SanDisk after 2001, and assumes without basis

20                                        (Reply Mot. at 4; *see also* Keeley 2d Rep. ¶ 33.)

21       **C.      Dr. Sullivan Has No Basis To Opine**

22

23           Dr. Sullivan opines that

24

25           .  For example, Dr. Sullivan testified that

26

27           (Sullivan Tr. at 215; *see also* Mot. at 8-9.)

28           Dr. Sullivan's testimony should be excluded because he impermissibly opines on the

                                                    4

1  parties' intent underlying their license agreements.  (Mot. at 8; Reply Mot. at 9.)  In addition, Dr.

2  Sullivan's opinion is unreliable because it lacks adequate factual basis.  Dr. Sullivan did not

3  analyze whether █████

4  ████████████████████████████████████████████████████████

5  ████████████████████████  (Sullivan Tr. at 71-72, 176, 211-12.)

6  **II.    DR. SULLIVAN'S OPINIONS RELATING TO SANDISK'S ALLEGED MARKET**
   **POWER IN THE PUTATIVE FLASH CHIP MARKET SHOULD BE EXCLUDED**

7

8      Dr. Sullivan's opinions that ████████████████████████████████

9  ████████████████████████████  should be excluded on multiple grounds.

10     **A.    Dr. Sullivan Provides No Admissible Direct Evidence That SanDisk Had**
   **Market Power in the Putative Flash Chip Market**

11

12     To establish market power through direct evidence, Plaintiffs must prove both (i) restricted

13  output and (ii) supracompetitive pricing.  *See Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421,

14  1434 (9th Cir. 1995).  Proof of restricted output requires evidence that the defendant "restrict[ed]

15  its own, and hence the market's, output."  *Church & Dwight Co. v. Mayer Labs., Inc.*, 868 F. Supp.

16  2d 876, 896 (N.D. Cal. 2012), *rev'd in part, vacated in part on other grounds on reconsideration*,

17  2012 WL 1745592 (N.D. Cal. May 16, 2012).  Proof of supracompetitive prices requires a

18  comparison between the defendant's prices and margins relative to those of its rivals.  *See id.* at

19  897 (holding Mayer failed to provide evidence of supracompetitive pricing by C&D, where Mayer

20  did "not provide evidence as to its own or other rivals' comparative margins" and Mayer's prices

21  were "even higher" than C&D's).

22     Dr. Sullivan's direct evidence analysis should be excluded as unreliable and unhelpful to

23  the trier of fact because it is contrary to law.  *See, e.g., Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL

24  2571332, at *6 (N.D. Cal. June 30, 2012) (excluding expert damages opinion that was "contrary to

25  law"); *Bailey v. Allgas, Inc.*, 148 F. Supp. 2d 1222, 1245-46 (N.D. Ala. 2000) (expert economist's

26  market power opinion was "contrary to law" and, therefore, unreliable and unhelpful to the trier of

27  fact, where expert failed to analyze whether defendant charged supracompetitive prices or excluded

28  competitors), *aff'd*, 284 F.3d 1237 (11th Cir. 2002).

5

1    Dr. Sullivan opines that ███████████████████████████████████

2    ████████████████████████████████████████████████████████ (Sullivan

3    2d Rep. ¶ 42.)  But Dr. Sullivan fails—as required by law—to analyze whether SanDisk restricted

4    marketwide output of flash chips or charged supracompetitive prices for its flash chips.  In fact, his

5    direct evidence opinion is not based on *any analysis* of flash chip output or pricing.  (*See*

6    *id.* ¶ 42(a)-(i).)  Further, the data presented elsewhere in Dr. Sullivan's report illustrates that

7    ████████████████████████████████████████████████████████████████

8    ████████████████████████████████████ (*Id.* Atts. I-3, I-4; *see also* Keeley 2d Rep. ¶ 50 & Ex. 3.)

9    Dr. Sullivan provides no analysis establishing that flash chip output would have been even higher,

10   or flash chip prices even lower, but for the alleged misconduct.[3]

11   **B.     Dr. Sullivan Provides No Admissible Indirect Evidence That SanDisk Had
             Market Power in the Putative Flash Chip Market**

12

13   To prove market power through indirect evidence, "a plaintiff must:  (1) define the relevant

14   market, (2) show that the defendant owns a dominant share of that market, and (3) show that there

15   are significant barriers to entry and show that existing competitors lack the capacity to increase

16   their output in the short run."  *Rebel Oil*, 51 F.3d at 1434.

17   Dr. Sullivan offers opinions relating to the definition of the alleged flash chip market,

18   market concentration and barriers to entry.  Each of these opinions should be excluded.

19   **1.     Dr. Sullivan's Opinions Regarding the Putative Flash Chip Market in the
             United States Should Be Excluded**

20

21   "Monopolization claims can only be evaluated with reference to properly defined

22   geographic and product markets."  *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096,

23   1104 (9th Cir. 1999).  "'The product market includes the pool of goods or services that enjoy

24   reasonable interchangeability of use and cross-elasticity of demand.'"  *Morgan, Strand, Wheeler &*

25   *Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1489 (9th Cir. 1991) (citation omitted).  "A geographic

26   ───────────────────────
     [3] Dr. Sullivan's failure to properly define a relevant market for flash chips (*see infra* pp. 7-9) also

27   renders his market power opinion inadmissible.  *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965) ("Without a definition of th[e] market there is no way to

28   measure [the defendant's] ability to lessen or destroy competition.").  (*See also* Mot. at 4-5 & n.3.)

DEF.'S NOTICE OF MOTION, MOTION AND MEM. ISO OF MOTION TO        CASE NO.  CV 10-02787-SBA
EXCLUDE THE SECOND REPORT AND TESTIMONY OF DR. SULLIVAN

market is ""'an area of effective competition' . . . where buyers can turn for alternative sources of supply.""" *Id.* at 1490 (ellipsis in original; citations omitted).

Dr. Sullivan opines ███████████████████████████ (Sullivan 2d Rep. ¶ 49) and ████████████████

███████ (*Id.* ¶ 66.) Because Dr. Sullivan's analyses of both the product and geographic markets are fatally defective, his market definition opinions should be excluded.

(a)   <u>Dr. Sullivan's Product Market Definition Opinion Is Inadmissible</u>

Dr. Sullivan's opinion ██████████████████████████ is based on his purported application of the SSNIP test outlined in the Horizontal Merger Guidelines used by the Department of Justice and the Federal Trade Commission. (Sullivan 2d Rep. ¶¶ 49, 51-53.)

While the SSNIP test is a recognized methodology,[4] Dr. Sullivan did not perform the proper analysis. As a result, his market definition opinion is unreliable and should be excluded. *See, e.g.*, *Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 918-19 (6th Cir. 2009) (affirming exclusion of market definition opinion because expert did not properly perform SSNIP test); *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 988-89 (C.D. Cal. 2012) (expert's "failure to analyze, in a meaningful way, the possibility of a narrower or broader product market render[ed] his purported application of the SSNIP methodology unreliable under Rule 702(d)").

Here, Dr. Sullivan did not reliably apply the SSNIP methodology. Rather, he ████

████████████████████████████████████████████████████

_____

[4] The SSNIP test analysis was outlined in *United States v. Oracle Corp.*, 331 F. Supp. 2d 1098 (N.D. Cal. 2004):

> Starting with the smallest possible group of competing products, the [1997 Horizontal Merger] Guidelines then ask "whether 'a hypothetical monopolist over that group of products would profitably impose at least a "small but significant and nontransitory" [price] increase ["(SSNIP)"],' "generally deemed to be about five percent lasting for the foreseeable future. If a significant number of customers respond to a SSNIP by purchasing substitute products having "a very considerable degree of functional interchangeability" for the monopolist's products, then the SSNIP would not be profitable. Accordingly, the product market must be expanded to encompass those substitute products that constrain the monopolist's pricing. The product market is expanded until the hypothetical monopolist could profitably impose a SSNIP.

*Id.* at 1111-12 (alterations in original; citations omitted).

1     █████████████████████████████████████████ (Sullivan 2d Rep. ¶¶ 51-52),

2 but that ████████████████████████ (*Id.* ¶ 53.)  Dr.

3 Sullivan failed to employ the iterative approach called for under the SSNIP test, which requires

4 adding one product at a time until the market is large enough that a hypothetical monopolist could

5 impose a SSNIP.  (Keeley 2d Rep. ¶ 79.)  For example, Dr. Sullivan did not evaluate whether a

6 hypothetical monopolist of multiple—but not all—████████████ could impose a SSNIP.  He

7 also failed to perform SSNIP tests based on other differences in flash chip characteristics, such as

8 data transfer speed, size or endurance.[5]  Moreover, Dr. Sullivan's conclusions regarding the

9 outcome of his SSNIP tests are pure conjecture that are unsupported by any empirical analysis; he

10 did not analyze any market data, such as pricing or output.  *See Se. Mo. Hosp. v. C.R. Bard, Inc.*,

11 642 F.3d 608, 616 (8th Cir. 2011) (rejecting SSNIP analysis because expert "offer[ed] no market

12 studies to support [his] claim" that customers would not substitute products in response to SSNIP).

13        The record evidence that Dr. Sullivan failed to consider suggests that the alleged market for

14 all flash chips is both overly broad and under-inclusive.  As Dr. Keeley points out, Dr. Sullivan's

15 own ██████████—which Dr. Sullivan disregarded when considering the relevant product

16 market—███████████████████████████ which indicates that ███

17 █████████████████████████████████.  (Keeley 2d

18 Rep. ¶ 75 & Ex. 10 (citing Sullivan 2d Rep. Att. M-6).)  In addition, Dr. Sullivan dismissed

19 evidence ██████████████████████████████████████████

20 ██████████████ (*Id.*)  Dr. Sullivan's failure ████████████

21 ████████ renders his market definition opinion unreliable.  *See, e.g., Ky. Speedway*, 588 F.3d at

22 917-18 (affirming exclusion of market definition opinion where expert "inadequately examined

23 possible substitutes").

24            (b)    <u>Dr. Sullivan's Geographic Market Definition Opinion Is Inadmissible</u>

25     Dr. Sullivan's opinion █████████████████████████████

---

[5] As this Court has recognized, "[f]lash chips vary in terms of: (1) density (capacity); (2) speed; (3) size; (4) power consumption and voltage requirements; (5) reliability; (6) package type; and (7) endurance (the number of times memory can be erased and rewritten)."  *In re Flash Memory Antitrust Litig.*, 2010 WL 2332081, at *1 (N.D. Cal. June 9, 2010).

1  ████████████  should be excluded for two reasons.

2     ***First***, Dr. Sullivan again fails to properly apply the SSNIP methodology on which he

3  purportedly relies.  Dr. Sullivan states ████████████████████████████

4  ████████████████████████████████████████████████████

5  ████████████████████████████████████████████

6  ████████████████████  (Sullivan 2d Rep. ¶ 67.)  But Dr. Sullivan's assertions again

7  are purely conclusory.  He cites no evidence of ████████████████████

8  ████████████████  during the Class Period.[6]  More importantly, he does not test

9  ████████████████████████████  could impose a SSNIP.

10    ***Second***, Dr. Sullivan does not evaluate the "'''area of effective competition' . . . where

11  buyers can turn for alternative sources of supply,'''" as required by law.  *See Morgan, Strand*, 924

12  F.2d at 1490 (ellipsis in original; citations omitted).  Dr. Sullivan simply fails to analyze whether a

13  ████████████████████████████████████████

14  This failure is particularly glaring, given that Dr. Sullivan acknowledges ████████

15  ████████████  (Sullivan 2d Rep. ¶ 67) and uses ████████████████

16  ████████████  (*Id.* ¶ 73 & Atts. I-5, I-6.)  Indeed, the flash chips that SanDisk

17  sold during the Class Period ████████████████████  (Keeley 2d Rep. ¶ 76.)

18  Dr. Sullivan's failure to analyze where customers would look to purchase flash chips renders his

19  opinion inadmissible.  *See, e.g., McLaughlin Equip. Co. v. Servaas*, 2004 WL 1629603, at *8 (S.D.

20  Ind. Feb. 18, 2004) (excluding geographic market opinion because expert failed to analyze where

21  customers would look to purchase the relevant product).

22         2.    Dr. Sullivan's Market Concentration Analysis Is Contrary to Law and
                 Unhelpful to the Trier of Fact

24     Dr. Sullivan analyzes flash chip market concentration pursuant to the Herfindahl-

25  Hirschman Index ("HHI"), which ████████████████████████████████

26  ████████████████████████  (Sullivan 2d Rep. ¶ 71.)  Based on his conclusion

---

27  [6] Dr. Sullivan also ignores that SanDisk generally licensed its patents on a worldwide—not U.S.-
28  only—basis.  (Keeley 2d Rep. ¶ 76.)

DEF.'S NOTICE OF MOTION, MOTION AND MEM. ISO OF MOTION TO          CASE NO.  CV 10-02787-SBA
EXCLUDE THE SECOND REPORT AND TESTIMONY OF DR. SULLIVAN

1      ███████████████████████████████████████████████████, he

2 calculates ████████ flash chip HHIs during this period.  (*Id.* ¶ 73 & Att. I-5.)  Dr. Sullivan

3 acknowledges ██████████████████████████████████████████████

4 ████████ (*id.* ¶ 75), and ██████████████████████████████

5 ██████████████████ (*Id.* Att. I-5.)  He concludes that ████████

6 ████████████████████████████████ (Sullivan Tr. at 412-14.)

7      Dr. Sullivan's market concentration opinion should be excluded for two independent

8 reasons.  ***First***, his analysis is contrary to law.  "Courts generally require a 65% market share to

9 establish a prima facie case of market power."  *Image Technical Servs., Inc. v. Eastman Kodak Co.*,

10 125 F.3d 1195, 1206 (9th Cir. 1997); *see also Rebel Oil*, 51 F.3d at 1438 ("[N]umerous cases hold

11 that a market share of less than 50 percent is presumptively insufficient to [establish market

12 power.").  ████████████████████████████████████████

13 ██████████████████████████████ should be excluded as contrary to law.  *See,*

14 *e.g.*, *Bailey*, 148 F. Supp. 2d at 1245-46.[7]

15      ***Second***, Dr. Sullivan's HHI calculations are unhelpful to the trier of fact.  His calculations

16 ████████████████████████ which is inconsistent with his opinion that the relevant

17 geographic market for flash chips ████████████████ (Sullivan 2d Rep. ¶ 66.)

18 Further, HHI calculations are irrelevant in the context of this litigation brought under Section 2 of

19 the Sherman Act, 15 U.S.C. § 2.  "An HHI analysis . . . is utilized to determine before and after

20 market concentrations when considering whether proposed mergers will be presumptively

21 anticompetitive.  [It is] irrelevant in this case [brought under Section 2], in which no merger is

22 contemplated and only market share is at issue."  *Pilch v. French Hosp.*, 2000 WL 33223382, at *7

23 _____

24 [7] To the extent Dr. Sullivan suggests that SanDisk's share of any market can be aggregated with its

25 licensees' to evaluate market power, such an approach is contrary to law.  *See Monsanto Co. v. Scruggs*, 342 F. Supp. 2d 568, 583 (N.D. Miss. 2004) (rejecting experts' arguments that "assume[d] the propriety of including the market shares of Monsanto's seed partners in

26 determining Monsanto's share of the relevant market" because "[n]o [l]egal precedent supports such a remarkable position.  Monsanto's market share must be determined solely on the quantity of

27 goods and/or services Monsanto sold to customers."), *aff'd*, 459 F.3d 1328 (Fed. Cir. 2006).  *See also Rebel Oil*, 51 F.3d at 1443 ("To pose a threat of monopolization, one firm *alone* must have the

28 power to control market output and exclude competition.").

1    n.12 (C.D. Cal. Apr. 28, 2000).

2                    3.    Dr. Sullivan Fails to Analyze Whether There Were Barriers to Expansion in
                           the Flash Chip Market, and His Opinion That There Were Significant
3                          Barriers to Entry Is Unsupported and Does Not Fit the Facts

4           To establish market power through indirect evidence, Plaintiffs also must prove the

5    existence of both barriers to expansion and barriers to entry. *See Rebel Oil*, 51 F.3d at 1434.

6    Barriers to expansion prevent firms from increasing output in the short run. *See id.* Barriers to

7    entry are "either 'additional long-run costs that were not incurred by incumbent firms but must be

8    incurred by new entrants,' or 'factors in the market that deter entry while permitting incumbent

9    firms to earn monopoly returns.'" *L.A. Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1427 (9th Cir.

10   1993) (citation omitted).

11          As an initial matter, Dr. Sullivan offers no opinion or analysis regarding barriers to

12   expansion in the putative flash chip market. This failure alone renders his opinion contrary to law

13   because proof of barriers to expansion is required to establish market power through indirect

14   evidence. *See, e.g.*, *Townshend v. Rockwell Int'l Corp.*, 55 U.S.P.Q.2d 1011, 1021 (N.D. Cal.

15   2000) (Armstrong, J.) (dismissing Section 2 counterclaim because counterclaimant "has not alleged

16   facts to show that competitors are unable to expand output").

17          With regard to barriers to entry, Dr. Sullivan's opinion should be excluded because it is

18   unsupported by any analysis and does not fit the facts of the case. Dr. Sullivan opines

19

20

21   (Sullivan 2d Rep. ¶ 80.)  Even though Dr. Sullivan defines

22

23                          (*id.* ¶ 79 (citation omitted)), he conducts no analysis to determine whether a new

24   entrant had to incur higher costs than an incumbent firm did to enter the putative flash chip market.

25   For example, Dr. Sullivan does not evaluate whether a new entrant would have been required to

26   spend more on research and development than SanDisk.

27          In addition, Dr. Sullivan's opinion

28                           does not fit the facts of the case because the record provides ample evidence of

                                                        11

1  entry into the alleged flash chip market.  Indeed, Dr. Sullivan's own data

2

3  (Sullivan 2d Rep. Att. I-5; *see also* Keeley 2d Rep. ¶ 51 & Ex. 3.)

4

5                                            (*Id.*)

6

7                                                    (*Id.*)  Dr. Sullivan does not even

8  attempt to explain how the emergence of new entrants is consistent with

9

10  **III.    DR. SULLIVAN'S OPINIONS RELATING TO SANDISK'S ALLEGED MARKET
         POWER IN ANY FLASH PRODUCT MARKET SHOULD BE EXCLUDED**

11

12       In his report, Dr. Sullivan opines

13

14

15                                      (Sullivan 2d Rep. ¶ 65; *see also id.* ¶ 78

16

17

18

19       But Dr. Sullivan contradicted this opinion at his deposition.  Specifically, he testified that

20

21

22       (Sullivan Tr. at 377; *see also id.* at 378

23                                      Significantly, Dr. Sullivan testified that

24

25       (*See id.* at 393, 418-19.)

26       In light of Dr. Sullivan's deposition testimony, the opinion in his report that

27

28  should be excluded.  *See Chartier v. Brabender Technologie, Inc.*, 2011 WL 4732940, at *7-8 (D.

12

1  Mass. Oct. 5, 2011) (excluding statements in expert report "that were directly contradicted by

2  [expert]'s later deposition testimony" and noting that "[t]he purpose behind expert disclosures, and

3  particularly expert depositions, would be defeated if an expert were permitted to give varying

4  versions of his opinion, leaving the opponent to guess at which version will be rendered at trial").

5  Further, Dr. Sullivan's opinions relating to the flash product markets should be excluded for

6  multiple additional reasons.

7        **A.    Dr. Sullivan Provides No Admissible Direct Evidence That SanDisk Had
              Market Power in Any Flash Product Market**

8

9        Dr. Sullivan presents no admissible evidence to support an opinion that SanDisk had market

10  power in any flash product market.  While Dr. Sullivan claims that his regression model

11  ██████████████████████████████████████████████████ (Sullivan 2d Rep. ¶

12  43(c)), that model is inadmissible.  (*See supra* pp. 2-3.)  Even ignoring the regression model's fatal

13  flaws, Dr. Sullivan's analysis still cannot provide evidence of restricted marketwide output and

14  supracompetitive prices for any flash product.  The model does not show that SanDisk restricted its

15  own output, let alone marketwide output for any flash product.  In addition, the model cannot

16  establish supracompetitive pricing because it does not analyze SanDisk's margins or the prices or

17  margins of any SanDisk competitor.

18        **B.    Dr. Sullivan Provides No Admissible Indirect Evidence That SanDisk Had
              Market Power in Any Flash Product Market**

19

20        Dr. Sullivan's opinions regarding the putative flash product markets suffer from the same

21  fatal defects as his opinions relating to the alleged flash chip market.

22        *First*, Dr. Sullivan did not reliably apply the SSNIP analysis to define the relevant product

23  markets.  Like his flash chip market analysis (*see supra* pp. 7-9), Dr. Sullivan failed to employ the

24  iterative approach required under the SSNIP test and performed no empirical analysis to support

25  his assertions that a SSNIP could or could not be imposed.  For example, he opines ███████████

26  ███████████████████████████████████████████████████████

27  ██████████████████ (Sullivan 2d Rep. ¶ 60(b)), even though he did not test whether customers

28  would substitute among these products in response to a SSNIP.  In fact, the record indicates that

13

1   ████████████ are not all interchangeable and, therefore, they do not occupy the same product

2   market. (*See* Keeley 2d Rep. ¶ 82; Chen. Decl. at Ex. 41 ("Dimont Tr.") at 21-23 (██████████

3   ██████████████████████████████████████████████████████████████).)[8]

4       Dr. Sullivan also did not adequately test whether flash product customers would substitute

5   ████████████████████████████. For example, elsewhere in his report, Dr. Sullivan references ██████

6   ██████████████████████████████████ (Sullivan 2d Rep. ¶ 53(c)(iv)

7   & n.113.) But Dr. Sullivan did not test whether customers would switch between these products in

8   the event of SSNIP, nor did he conduct any other analysis of substitution between them. This

9   failure to consider potential substitutes again warrants exclusion of Dr. Sullivan's product market

10  analysis. *See, e.g.*, *Ky. Speedway*, 588 F.3d at 917-18.

11      ***Second***, Dr. Sullivan has no basis to support his opinion ████████████████████

12  ██████████████████████████ (Sullivan 2d Rep. ¶ 68.) He did not analyze whether

13  a hypothetical ██████████████ of any flash product could impose a SSNIP, nor did he consider

14  where customers look to source flash products. And, once again, he ignored evidence that major

15  flash product manufacturers that sell ████████████████—including SanDisk—manufacture

16  their products ██████████████. (Keeley 2d Rep. ¶ 76.)

17      ***Third***, Dr. Sullivan's analyses of market concentration for the flash products are contrary to

18  law and unhelpful to the trier of fact. SanDisk's shares of the putative flash product markets were

19  ████████████████████████████████████. (*See* Sullivan 2d Rep. Att. I-

20  7.) And Dr. Sullivan's analysis of ██████ HHIs again is inconsistent with his putative market

21  definitions and irrelevant in the context of a Section 2 litigation. (*See supra* p. 10.)

22      ***Fourth***, Dr. Sullivan offers no analysis of barriers to expansion in the putative flash product

23  markets, nor does he offer any support for his conclusion █████████████████████████

24  ██████████████ (*See* Sullivan 2d Rep. ¶ 81.) Once again, his opinions regarding barriers

25

26  [8] Dr. Sullivan argues ████████████████████████████████████████████████

27  ██████ (Sullivan 2d Rep. ¶ 63.) But those materials do not analyze "markets" from an antitrust perspective. Further, analysis of industry recognition does not itself provide a reliable basis to opine regarding market definition. *See Live Concert*, 863 F. Supp. 2d at 993 (excluding

28  market definition analysis "almost entirely" focused on "industry/public recognition").

14

1    to entry do not fit the facts of the case.  As Dr. Keeley points out, multiple firms entered and

2    expanded in the alleged flash product markets during the Class Period.  (Keeley 2d Rep. ¶¶ 65-70.)

3    **IV.**     **DR. SULLIVAN'S DAMAGES CALCULATIONS SUFFER FROM ADDITIONAL**

4            **FATAL FLAWS**

5        Even ignoring the above-described fatal flaws in Dr. Sullivan's regression model and his

6    underlying assumptions (*see supra* pp. 2-5), there are additional grounds that warrant exclusion of

7    Dr. Sullivan's damages calculations.

8        *First,* Dr. Sullivan's damages calculations should be excluded because

9

10                       .  Courts routinely exclude damages models when the

11    expert fails to distinguish between harm caused by alleged misconduct and harm flowing from

12    lawful activity.  *See, e.g., Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir.

13    2000) (expert's damages model "should not have been admitted . . . because it did not separate

14    lawful from unlawful conduct").

15        Here, the starting point of Dr. Sullivan's damages analysis is

16                              (Sullivan

17    2d Rep. Att. K-11.)  But it is undisputed that

18

19

20    (Sullivan Tr. at 284-86.)  Dr. Sullivan's failure to distinguish between

21                       renders his damages calculation fatally flawed and

22    inadmissible.

23        *Second*, Dr. Sullivan still opines on (i) damages pre-dating the Class Period beginning on

24    June 25, 2006 and (ii) prejudgment interest.  (Sullivan 2d Rep. ¶¶ 19(e), 132-34.)  These opinions

25    should be excluded as unhelpful to the trier of fact and contrary to law.  (Mot. at 15.)

26                                          **CONCLUSION**

27        For the foregoing reasons, SanDisk respectfully requests that the Court exclude Dr.

28    Sullivan's opinions and testimony set forth in his second report.

DEF.'S NOTICE OF MOTION, MOTION AND MEM. ISO OF MOTION TO       CASE NO.  CV 10-02787-SBA
EXCLUDE THE SECOND REPORT AND TESTIMONY OF DR. SULLIVAN

1  DATED:  February 3, 2015          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

2
                                     By:  _____/s/ James P. Schaefer_____
3                                                James P. Schaefer

4                                    Attorneys for Defendant,
                                     SANDISK CORPORATION
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEF.'S NOTICE OF MOTION, MOTION AND MEM. ISO OF MOTION TO          CASE NO.  CV 10-02787-SBA
EXCLUDE THE SECOND REPORT AND TESTIMONY OF DR. SULLIVAN