RAOUL D. KENNEDY (Bar No. 40892)
DAVID W. HANSEN (Bar No. 196958)
JAMES P. SCHAEFER (Bar No. 250417)
IAN CHEN (Bar No. 287778)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California  94301-1908
Telephone:   (650) 470-4500
Raoul.Kennedy@skadden.com
David.Hansen@skadden.com
James.Schaefer@skadden.com
Ian.Chen@skadden.com

MICHAEL H. MENITOVE (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
Telephone:   (212) 735-3000
Michael.Menitove@skadden.com

Attorneys for Defendant,
SANDISK CORPORATION

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ALFRED T. GIULIANO, Chapter 7 & Trustee of the Ritz Estate, on Behalf of the Ritz Estate; CPM Electronics Inc.; E.S.E. Electronics, Inc.; and MFLASH, Inc., <br><br> On Behalf of Themselves and All Others Similarly Situated, <br><br>            Plaintiffs, <br><br>      v. <br><br> SANDISK CORPORATION, <br><br>          Defendant. | CASE NO.  CV 10-02787-SBA <br><br> **SANDISK CORPORATION'S RENEWED NOTICE OF MOTION, MOTION FOR SUMMARY JUDGMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES** <br><br><br> Hearing Date:  January 13, 2016 <br> Time:            1:00 p.m. <br> Courtroom:   1, Oakland <br> Judge:        Hon. Saundra B. Armstrong |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** at 1:00 P.M. on January 13, 2016, or as soon thereafter as the matter may be heard, Defendant SanDisk Corporation ("SanDisk") will, and hereby does, move both for summary judgment on all claims set forth in the operative Fourth Amendment Complaint ("4AC") of Plaintiffs Alfred T. Giuliano, Chapter 7 Trustee of the Ritz Estate ("Ritz"), CPM Electronics, Inc. ("CPM"), E.S.E. Electronics, Inc. ("ESE"), and MFLASH, Inc. ("MFLASH") (together, "Plaintiffs"), and for summary adjudication that there is no genuine issue of material fact that:

1. SanDisk did not obtain U.S. Patent Nos. (a) 5,172,338 (the "'338 patent") or (b) 5,991,517 (the "'517 patent") (together, the "Disputed Patents") by fraud on the United States Patent and Trademark Office ("PTO") because:

    (a)    SanDisk did not misrepresent a material fact to the PTO;

    (b)    SanDisk did not withhold material references from the PTO that invalidate the Disputed Patents; and

    (c)    SanDisk did not have specific intent to deceive the PTO.

2. As to Plaintiffs' individual claims of monopolization and attempted monopolization of the alleged "flash *chip* market," Plaintiffs cannot prove (a) antitrust injury, (b) causation, or (c) damages as to their "Walker Process fraud," "tortious conversion," "customer threats," "anticompetitive settlement," and "refusal to deal" theories because:

    (a)    Plaintiffs have no evidence of injury, causation, or damages; and

    (b)    Plaintiffs did not purchase flash *chips*.

3. As to Plaintiffs' individual and class claims for monopolization and attempted monopolization of six "flash *product* markets," Plaintiffs cannot prove (a) antitrust injury, (b) causation, or (c) damages as to their "*Walker Process*" fraud," "tortious conversion," "customer threats," "anticompetitive settlement," and "refusal to deal" theories because:

    (a)    Plaintiffs have no evidence of injury, causation or damages in connection with their tortious conversion, customer threats, anticompetitive settlement, and refusal to deal claims;

    (b)    SanDisk does not possess (a) market power or (b) a dangerous probability of obtaining market power in any relevant flash *product* market; and

    (c)    Plaintiffs cannot prove causal antitrust injury and damages in connection with their *Walker Process* fraud claim.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and

1

1 Authorities in support thereof, the accompanying Declaration of Ian Chen, the reply papers to be

2 filed by SanDisk, the pleading and other papers on file herein, and such other evidence and

3 argument as may be presented to the Court.

4       SanDisk certifies that it has complied with the Court's meet and confer requirements and

5 that counsel for Plaintiffs have indicated that they will oppose this motion.

6 DATED:  October 16, 2015            SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

7

8                             By: _____ */s/ James P. Schaefer*
                                   JAMES P. SCHAEFER

9

10                                 Attorneys for Defendant,
                                SANDISK CORPORATION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SANDISK'S RENEWED MOTION FOR SUMMARY JUDGMENT            CASE NO.  CV 10-02787-SBA

1

## <u>TABLE OF CONTENTS</u>

2                                                                                              **Page**

3  I.      INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

4  II.     BACKGROUND ..........................................................................................................2

5          A.     Pertinent Procedural History.............................................................................2

6          B.     The Disputed Patents ........................................................................................4

7          C.     SanDisk's Patent Action Against Samsung .......................................................4

8          D.     The '338 Patent Reexamination.........................................................................6

9          E.     The SanDisk/ST Patent Actions.........................................................................8

10 III.    LEGAL ANALYSIS AND ARGUMENT .......................................................................10

11         A.     The Summary Judgment And *Walker Process* Fraud Standards...........................10

12         B.     SanDisk Did Not Commit Fraud During The '338 Patent Reexamination ..........12

13         C.     SanDisk Did Not Withhold Material References From The PTO ........................13

14         D.     Plaintiffs Cannot Establish The Other Elements Of Their Antitrust Claims........17

15                1.     Plaintiffs Cannot Prove They Suffered Antitrust Injury In A Markert
                          Where SanDisk Possessed Market Power Or A Dangerous
16                        Probability Of Obtaining Market Power...................................................18

17                2.     Plaintiffs Cannot Prove Causation And Damages ....................................21

18 IV.     CONCLUSION...............................................................................................................25

19

20

21

22

23

24

25

26

27

28

i

1

<u>**TABLE OF AUTHORITIES**</u>

2

<u>**Page(s)**</u>

3

<u>**OTHER AUTHORITIES**</u>

4

*Alexsam, Inc. v. IDT Corp.,*
  715 F.3d 1336 (Fed. Cir. 2013) ................................................................. 14, 15

5

6

*Allergan, Inc. v. Barr Labs., Inc.,*
  501 F. App'x 965 (Fed. Cir. 2013) ............................................................. 14, 15

7

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.,*
  190 F.3d 1051 (9th Cir. 1999) ........................................................ 2, 18, 20, 21

8

9

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
  459 U.S. 519, 540 (1983) ................................................................................ 18

10

*Bhan v. NME Hosps., Inc.,*
  772 F.2d 1467 (9th Cir. 1985) ........................................................................ 18

11

12

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
  429 U.S. 477 (1977) ........................................................................................ 18

13

*C.R. Bard, Inc. v. M3 Sys., Inc.,*
  157 F.3d 1340 (Fed. Cir. 1998) ...................................................................... 11

14

15

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986)) ....................................................................................... 10

16

*Centricut, LLC v. Esab Grp., Inc.,*
  390 F.3d 1361 (Fed. Cir. 2004) ...................................................................... 14

17

18

*City of Vernon v. S. Cal. Edison Co.,*
  955 F.2d 1361 (9th Cir. 1992) .................................................................... 21, 23

19

*Concord Boat Corp. v. Brunswick Corp.,*
  207 F.3d 1039 (8th Cir. 2000) ........................................................................ 22

20

21

*Cost Mgmt. Servs., Inc. v. Wash. Nat. Gas Co.,*
  99 F.3d 937 (9th Cir. 1996) ............................................................................ 18

22

*Dippin' Dots, Inc. v. Mosey,*
  476 F.3d 1337 (Fed. Cir. 2007) ...................................................................... 11

23

24

*Fla. Audubon Soc'y v. Bentsen,*
  94 F.3d 658 (D.C. Cir. 1996) ......................................................................... 22

25

*Forsyth v. Humana, Inc.,*
  114 F.3d 1467 (9th Cir. 1997) ........................................................................ 18

26

27

*Fresenius USA, Inc. v. Baxter Int'l, Inc.,*
  582 F.3d 1288 (Fed. Cir. 2009) ...................................................................... 16

28

*Glen Holly Entm't, Inc. v. Tektronix, Inc.,*
  352 F.3d 367 (9th Cir. 2003) .......................................................................... 18

ii

1  *Golden Bridge Tech., Inc. v. Apple Inc.*,
       2014 WL 2194501 (N.D. Cal. May 18, 2014) ................................................................24
2
    *Hynix Semiconductor Inc. v. Rambus Inc.*,
3      2009 WL 112834 (N.D. Cal. Jan. 16, 2009) ................................................................15
4  *Immersion Corp. v. Sony Computer Entm't Am., Inc.*,
       2005 WL 680026 (N.D. Cal. 2005) ..............................................................................15
5
    *In re Berg*,
6      320 F.3d 1310 (Fed. Cir. 2003) ....................................................................................13
7  *In re Fla. Cement & Concrete Antitrust Litig.*,
       278 F.R.D. 674 (S.D. Fla. 2012) ...................................................................................24
8
    *In re Fresh Del Monte Pineapples Antitrust Litig.*,
9      2008 WL 5661873 (S.D.N.Y. Feb. 20, 2008) ..............................................................24
10  *Innogenetics, N.V. v. Abbott Labs.*,
       512 F.3d 1363 (Fed. Cir. 2008) ....................................................................................13
11
    *KSR Int'l Co. v. Teleflex Inc.*,
12     550 U.S. 398 (2007) ......................................................................................................16
13  *MCI Commc'ns Corp. v. AT&T Co.*,
       708 F.2d 1081 (7th Cir 1982) .......................................................................................22
14
    *Meijer, Inc. v. Biovalil Corp.*,
15     533 F.3d 857 (D.C. Cir. 2008) ......................................................................................21
16  *Meyer v. Qualcomm, Inc.*,
       2009 WL 539902 (S.D. Cal. Mar. 3, 2009) ..................................................................20
17
    *Monroe Truck Equip., Inc. v. Universal Truck Equip., Inc.*,
18     2015 WL 4634959 (W.D. Wis. July 31, 2015) ............................................................15
19  *Nobelpharma AB v. Implant Innovations, Inc.*,
       141 F.3d 1059 (Fed. Cir. 1998) ....................................................................................11
20
    *O'Shea v. Littleton*,
21     414 U.S. 488 (1974) ......................................................................................................21
22  *Perfect Web Techs., Inc. v. InfoUSA, Inc.*,
       587 F.3d 1324 (Fed. Cir. 2009) ....................................................................................14
23
    *Phillips v. AWH Corp.*,
24     415 F.3d 1303 (Fed. Cir. 2005) ..............................................................................12, 16
25  *Proveris Scientific Corp. v. Innovasystems, Inc.*,
       536 F.3d 1256 (Fed. Cir. 2008) ....................................................................................15
26
    *Quintal Research Grp., Inc. v. Nintendo of Am., Inc.*,
27     2015 U.S. Dist. LEXIS 93488 (N.D. Cal. July 17, 2015) ...........................................12
28  *Rebel Oil Co. v. Atl. Richfield Co.*,
       51 F.3d 1421 (9th Cir. 1995) ...........................................................................21, 23, 25

iii

*SanDisk Corp. v. Int'l Trade Comm'n,*
219 F. App'x 984 (Fed. Cir. Mar. 6, 2007) ............................................................. 9

*Schumer v. Lab. Computer Sys.,*
308 F.3d 1304 (Fed. Cir. 2002) .......................................................................... 15

*Scripps Clinic & Research Found. v. Genentech, Inc.,*
927 F.2d 1565 (Fed. Cir. 1991) .......................................................................... 16

*Star Scientific Inc. v. R.J. Reynolds Tobacco Co.,*
537 F.3d 1357 (Fed. Cir. 2008) ............................................................. 11, 13, 17

*Sumitomo Mitsubishi Silicon Corp. v. MEMC Elec. Materials, Inc.,*
2007 WL 2318903 (N.D. Cal. Aug. 13, 2007) ..................................... 10, 12, 13

*Therasense, Inc. v. Becton, Dickinson & Co.,*
649 F.3d 1276 (Fed. Cir. 2011) ...................................................................... 11, 17

*Twin Cities Bakery Workers Health & Welfare Fund v. Biovail, Corp.,*
2005 WL 3675999 (D.D.C. Mar. 31, 2005) ........................................................ 21

*Universal Grading Serv. v. eBay, Inc.,*
563 F. App'x 571 (9th Cir. 2014) ...................................................................... 19

*Virgin Atl. Airways Ltd. v. British Airways PLC,*
69 F. Supp. 2d 571 (S.D.N.Y. 1999) ............................................................. 24, 25

*Vitronics Corp. v. Conceptronic, Inc.,*
90 F.3d 1576 (Fed. Cir. 1996) .......................................................................... 12

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.,*
382 U.S. 172 (1965) ............................................................................................ 1, 17

*Wyers v. Master Lock Co.,*
616 F.3d 1231 (Fed. Cir. 2010) ...................................................................... 14, 15

**STATUTES**

15 U.S.C. § 15(a) ......................................................................................................... 21

15 U.S.C. § 26 .............................................................................................................. 21

35 U.S.C. § 112 ........................................................................................................... 5

**REGULATIONS**

37 C.F.R. § 1.104(a) .................................................................................................... 13

37 C.F.R. § 1.56 .......................................................................................................... 13

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION AND SUMMARY OF ARGUMENT

To prevail on their *Walker Process* fraud antitrust claim, Plaintiffs must prove: (1) SanDisk knowingly enforced an invalid patent procured by fraud on the PTO, and (2) all of the other elements of a monopolization or attempted monopolization claim under Section 2 of the Sherman Act. *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174 (1965). After more than five years of litigation, multiple amendments to the complaint, and extensive discovery, Plaintiffs cannot prove either of these elements.

*First,* Plaintiffs cannot prove that SanDisk procured the Disputed Patents by fraud on the PTO or that the Disputed Patents are invalid.

Plaintiffs allege that SanDisk lied to the PTO during reexamination of the '338 patent by claiming that latch 721 in Figure 16 of the patent is a "one-way" latch instead of a "two-way" latch, and SanDisk furthered its lie by withholding a paper in which the '338 patent's inventors drew a two-way latch the exact same way they drew latch 721.  (4AC ¶¶ 48, 70-72.)  Neither act was deceptive.  It is undisputed that the PTO Examiner was presented two competing claim constructions regarding latch 721—SanDisk asserted it functioned as a one-way latch and Samsung asserted it functioned as a two-way latch.  The Examiner, who was a scientifically skilled artisan in the highly technical field at issue, knew that a latch drawn like latch 721 can function as either a one- or two-way latch depending on its implementation and that two-way latches are the "normal latch encountered by those in the art."  The Examiner knew these facts because SanDisk disclosed them to him.  Notwithstanding disclosure of these facts and Samsung's assertions that latch 721 is a two-way latch, the Examiner determined that latch 721, *properly construed in the context of the '338 patent disclosure*, is a "one-way" latch.  Plaintiffs have no admissible evidence to the contrary.  Accordingly, Plaintiffs cannot prove either falsity or specific intent to deceive the PTO.

Plaintiffs also allege that SanDisk withheld known references from the PTO that supposedly invalidate the pertinent claims of the Disputed Patents.  (4AC ¶¶ 53-69, 73-75.)  The Disputed Patents disclose and claim highly technical inventions relating to non-volatile semiconductor memory, and the allegedly invalidating references are also highly technical.

1

1   Plaintiffs chose not to rely on any technical expert opinion and they have no admissible evidence to

2   prove that the references invalidate any claims of the Disputed Patents.  Plaintiffs also have no

3   independent evidence that SanDisk intended to deceive the PTO by withholding the references,

4   much less the "clear and convincing" evidence required to prove a *Walker Process* claim.

5        ***Second***, Plaintiffs cannot prove all of the other elements of a monopolization or attempted

6   monopolization claim under Section 2 of the Sherman Act.

7        Plaintiffs cannot prove market power or a dangerous probability of market power, because

8   Dr. Ryan Sullivan, the expert on which they rely to prove this element, does not opine that SanDisk

9   possessed market power or a dangerous probability of obtaining market power in any flash ***product***

10  market that Plaintiffs allege SanDisk monopolized or attempted to monopolize.  Dr. Sullivan

11  opines only that SanDisk had market power in the flash ***chip*** market.  Plaintiffs' individual and

12  class claims that SanDisk monopolized or attempted to monopolize six flash ***product*** markets

13  therefore fail.  *See Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir.

14  1999) ("Parties whose injuries, though flowing from that which makes the defendant's conduct

15  unlawful, are experienced in another market do not suffer antitrust injury.").

16      Plaintiffs' individual claims that SanDisk monopolized or attempted to monopolize the

17  flash ***chip*** market—as to which they did not seek to class certification—also fail because they did

18  not purchase flash ***chips*** and, therefore, were not participants in the flash ***chip*** market.

19      Plaintiffs cannot prove antitrust injury, causation, or damages because Dr. Sullivan's

20  opinion, on which Plaintiffs rely to establish these elements, lacks sufficient factual bases.  Dr.

21  Sullivan assumes, without any evidentiary support, that ████████████████████████

22  ████████████████████████████████████████████████████████

23  ████████████████  Such expert testimony, which is rooted in hypothetical assumptions, is not a

24  substitute for actual market data and cannot, as a matter of law, defeat summary judgment.

25  **II.    BACKGROUND**

26       **A.    Pertinent Procedural History**

27      Plaintiffs' operative complaint alleges that SanDisk monopolized or attempted to

28  monopolize a market for NAND flash memory chips ("flash ***chips***") and six separate and distinct

2

1  markets for NAND flash memory products ("flash **products**"):  SSD, memory cards, wireless

2  memory, USB, embedded storage, and music and video players.  (4AC ¶ 29.)

3       The 4AC alleges several theories of anticompetitive conduct, *i.e.*, *Walker Process* fraud,

4  tortious conversion, customer threats, anticompetitive settlement, and refusal to deal.  Notably, in

5  their opposition to SanDisk's original summary judgment motion, Plaintiffs did not dispute that

6  SanDisk is entitled to summary judgment on their non-*Walker Process* fraud theories.  (*See* Dkt.

7  288.)  Nor could they do so, because Dr. Sullivan's antitrust injury, causation, and damages

8  opinions are ████████████████████████████████████  (*See* Declaration of Ian

9  Chen in Support of SanDisk's Renewed Motion for Summary Judgment ("Chen Decl.") Ex. 19

10  ¶ 12; Ex. 20 ¶ 14.)  SanDisk is therefore entitled to summary judgment on Plaintiffs' non-*Walker*

11  *Process* fraud theories.  Plaintiffs' inability to prove *Walker Process* fraud—discussed below—also

12  disposes of Plaintiffs' non-*Walker Process* fraud theories because they are each "dependent upon

13  the theory that [SanDisk has] engaged in the enforcement of fraudulently-obtained patents."  (Dkt.

14  60 at 4.)

15       On September 2, 2014, Plaintiffs filed a motion for class certification.  Notably, Plaintiffs

16  did not seek certification of a flash **chip** class or claims.  (Dkt. 240 at 3 n.2)

17       On May 14, 2015, the Court granted in part and denied in part Plaintiffs' motion for class

18  certification.  (Dkt. 302 ("Class Cert. Order").)  The Court certified the following class:

19      All persons residing in the United States who, on or after June 25, 2006, directly
   purchased from SanDisk, or from its controlled and licensed joint venture with
20      Toshiba Corporation, final flash products using technology claimed to be patented
   by SanDisk ("Final Flash Product Class").  Such products include, without
21      limitation, those SanDisk sold to retail firms, original equipment manufacturers
   ("OEMs"), and distributors.  Purchases of final flash products that contain a
22      microcontroller, a semiconductor that interfaces with electronic equipment and
   operates the flash memory, are included in the Final Flash Product Class.  Purchases
23      of flash memory combined with dynamic random access memory ("DRAM"), flash
   memory combined with static random access memory ("SRAM"), or flash memory
24      combined with a microprocessor ("system on a chip") are excluded from the Class.

25  (*Id.* at 40.)

26       Fact and expert discovery are closed.  (Dkt. 227.)  Plaintiffs did not disclose a technical

27  expert.  (Chen Decl. ¶ 21.)  Plaintiffs' sole expert is Dr. Sullivan.  (*Id.*)

28

1    **B.**    **The Disputed Patents**

2    The '338 patent, titled "Multi-state EEprom Read and Write Circuits and Techniques," is

3 directed generally to improvements in EEprom (electrically erasable and programmable read only

4 memory) technology. (Chen Decl. Ex. 1 (the '338 patent).) An EEprom is a type of non-volatile

5 semiconductor memory that stores information in an array of memory cells (the basic unit of

6 memory). (*Id.* at 1:13-68.) EEproms suffer fatigue due to programming and erasing. (*Id.* at 15:37-

7 46.) The '338 patent addressed the fatigue issue at the chip level through individually erasing only

8 selected sectors of the chip array and through inhibiting further programming of verified cells.[1]

9 (*See, e.g., id.* at 18:62-68, 20:10-16.) SanDisk founders Dr. Eli Harari and Sanjay Mehrotra are

10 named inventors. (*See generally id.*) The '338 patent expired in December 2009. (*Id.*)

11    The '517 patent, titled "Flash EEprom System With Cell By Cell Programming

12 Verification," is directed generally to improvements in "flash" EEprom technology. (Chen Decl.

13 Ex. 2.) "Flash" refers to the bulk erasing operation, where entire sectors are erased together. (*Id.*

14 at 1:66-2:2.) The '517 patent also addressed the fatigue issue at the chip level. (*Id.* at 2:10-14,

15 2:44-50, 2:61-67.) Dr. Harari and Mr. Mehrotra are also named inventors on the '517 patent. (*See*

16 *generally id.*) The '517 patent expired in April 2009. (*Id.*)

17    **C.**    **SanDisk's Patent Action Against Samsung**

18    SanDisk filed an action for patent infringement against Samsung with the U.S. International

19 Trade Commission ("ITC") on January 11, 1996 (the "Samsung Action"). SanDisk ultimately

20 asserted that Samsung infringed claims 1, 2 and 4 of U.S. patent No. 5,418,752 (the "'752 patent")

21 and claim 27 of the '338 patent. (4AC ¶ 45; *see also* Chen Decl. Ex. 7 at 1.)

22    Claim 27 of the '338 patent claims an improvement in programming a "chunk" of data into

23 addressed cells in an array of EEprom memory cells, "wherein the improvement comprises:"

24    "means for inhibiting further programming of correctly verified cells among the
plurality of addressed cells"; and

25

26    "means for further programming and verifying in parallel the plurality of addressed
cells and inhibiting programming of correctly verified cells until all the plurality of
addressed cells are verified correctly."

27

28    ---
[1] Fatigue can also be addressed at the system level *via* the controller through techniques such as wear leveling and error correction codes.

4

1   ('338 patent at 26:48-54.)  By inhibiting further programming of correctly verified cells until the

2   remainder of the addressed cells are verified to have been programmed correctly, the invention of

3   claim 27 reduces cell fatigue.  (Chen Decl. Ex. 7 at 149.)

4       A dispute arose between the parties concerning the proper construction of the program

5   inhibit claim element.  Both parties agreed that the inhibit "means" recited in claim 27 was latch

6   721 in Figure 16 of the '388 patent, illustrated as cross-coupled inverters:



FIG._16.

17   ('338 patent at Fig. 16.)[2]  SanDisk argued that claim 27 should be construed to mean that verified

18   cells were "permanently inhibited" pending programming of the remaining cells and that latch 721

19   was a "one-way" latch that performs the permanent inhibit function.  (Chen Decl. Ex. 8 at 25-26.)

20   Samsung argued that the claim covered "temporary inhibit" and that latch 721 should be construed

21   to be a "two-way" latch.  (Chen Decl. Ex. 9 at 7-14.)

22       The parties presented extensive expert submissions, testimony, proposed fact findings, and

23   argument on this claim construction issue to the ITC Administrative Law Judge ("ALJ").  (Chen

24   Decl. Ex 7 at 2.)  This included admissions by Mr. Mehrotra, one of the named inventors on

25   the '338 patent, that one- and two-way latches are often drawn the same way and "a two-way latch

26   is drawn the exact same way as latch 721 in Fig. 16."  (*Id.* at 66; Chen Decl. Ex. 10 at RFF 352.)

---

27
28   [2]  Under 35 U.S.C. § 112(f), "[a]n element in a claim for a combination may be expressed as a
means . . . for performing a specified function . . . and such claim shall be construed to cover the
corresponding structure . . . described in the specification and equivalents thereof."

On February 26, 1997, the ALJ issued an Initial Determination in which he exhaustively reviewed the parties' submissions and "found as a matter of law that claim 27 requires permanent inhibition of further programming pulses to a cell that has been verified during the programming of a chunk of data." (Chen Decl. Ex. 7 at 93.)  He also held that "latch 721 in Figure 16 is a 'one-way latch,'" (*id.* at 66) and that "the inhibit means [of claim 27] should be interpreted to include a one-way latch 721 or its equivalent" (*id.* at 70).  In fact, the ALJ held that "[t]he preferred embodiment of the '338 patent is a multistate device" and that "*[i]f latch 721 were not a one-way latch, there would be catastrophic failure of the multistate device.*" (*Id.* at 68 & 173 (emphasis added).)  In his decision, the ALJ acknowledged Mr. Mehrotra's testimony that:

> Latches are often referred to as "one-way" or "two-way."  One-way and two-way latches are often drawn in the same manner.  Mehrotra, Tr. 372, 397.

(*Id.* at 66, 172.)

The ALJ rejected Samsung's invalidity arguments concerning two pieces of prior art—the "Torelli" article and the "M293 device" (and related technical product brochures)—because they did not "disclose the function of permanently inhibiting the programming of verified cells" and this concept "was not obvious to an individual of ordinary skill in 1989." (*Id.* at 97; *id.* at 94, 101.)

Samsung requested full ITC review of the ALJ's Initial Determination.  On April 15, 1997, the ITC, "[h]aving reviewed the record in [the] investigation, including the parties' written submissions the Commission determined" only to review three issues concerning whether the ALJ erred in finding certain Samsung devices infringed the '752 patent. (Chen Decl. Ex. 29 at 2.) None of the issues concerned the ALJ's conclusion that latch 721—as properly construed based on the '338 patent disclosure—was a one-way latch, which the ITC found no reason to review.

SanDisk and Samsung settled their differences and entered into a patent portfolio cross license agreement on June 27, 1997, before any final determination by the ITC. (*See* Chen Decl. Ex. 24.)  The ALJ's findings were not appealed to the Federal Circuit.

### D.    The '338 Patent Reexamination

While the Samsung action was pending, SanDisk and Samsung requested reexamination of the '338 patent based on the Torelli article and the M293 product and related brochures. (Chen

1  Decl. Exs. 3-4.)  The PTO granted the request on November 18, 1996.  (*Id.* Exs. 5, 13.)

2          The reexamination centered on Samsung's and SanDisk's claim construction positions

3  regarding the program inhibit claim element—*i.e.*, whether it covers "permanent" or "temporary"

4  inhibit and relatedly whether latch 721 is a one- or two-way latch. (Chen Decl. Ex. 6 at 7-8; Ex. 12

5  at 3-12.) SanDisk provided the PTO with all of the pertinent materials from the Samsung action,

6  including briefs, expert reports, testimony, proposed fact findings, the Initial Determination, and

7  the ITC's April 15, 1997 review order.  (Chen Decl. ¶ 8 & Ex. 6 at 5-6; Exs. 11, 15.)  The

8  Examiner was thus informed that (i) a "two-way latch is the normal latch encountered by those in

9  the art," (ii) SanDisk admitted both that one- and two-way latches are often drawn in the same

10  manner, and (iii) "a two-way latch is drawn the exact same way as latch 721 in Fig. 16."  (Chen

11  Decl. Ex. 10 at 60-62.)

12          Additionally, Samsung presented the PTO with numerous arguments in support of its

13  position.  These included arguments that (i) the ALJ's decision on the permanent inhibit/one-way

14  latch issue was wrong and "the findings of the ALJ are not binding on the PTO" (Chen Decl. Ex.

15  12 at 2 n.2), (ii) "none of the terms now advanced by SanDisk in support of its interpretation [of

16  claim 27]—'program terminate,' permanently inhibit, or 'one-way latch'—appear anywhere in the

17  specification or claims of the '338 patent" (*id.* at 5), (iii) SanDisk's interpretation was "inconsistent

18  with the express language (and figures) disclosed" in the '338 patent (*id.* at 9), and (iv) because

19  claim 27 was not limited to "permanently latched inhibit," the claim was invalid based on the

20  submitted prior art.  (*Id.* at 12-15.)

21          On April 16, 1997, the Examiner rejected Samsung's arguments and confirmed the

22  patentability of claim 27 and the other challenged claims.  In the "Reason For Patentability/

23  Confirmation," the Examiner held that "the inhibiting feature recited in the claims of the '338

24  patent is enabled by latch 721 in Figure 16 which is a one-way resettable latch."  (Chen Decl. Ex.

25  14 at 3.)  He also held that the Torelli article and the "product brochures and technical notes

26  (including M293)" did not disclose "means for inhibiting programming of correctly verified cells

27  until all the plurality of cells are verified correctly."  (*Id.* at 2.)

28

SANDISK'S RENEWED MOTION FOR SUMMARY JUDGMENT          CASE NO.  CV 10-02787-SBA

E.    **The SanDisk/ST Patent Actions**

In 2005, STMicroelectronics, Inc. ("ST") sued SanDisk for patent infringement in the Eastern District of Texas. (Chen Decl. Ex. 25.) ST also sued SanDisk in California state court, claiming to own a number of SanDisk patents that Dr. Harari was supposedly required to assign to a prior company he had founded that ST later acquired. (Chen Decl. Ex. 28.) SanDisk filed two ITC investigations, 337-TA-526 (the "-526 Investigation") and 337-TA-560 (the "-560 Investigation"), and an infringement action in this District alleging that ST infringed the Disputed Patents. (Chen Decl. Exs. 26, 30-31.) ST filed a *Walker Process* counterclaim against SanDisk, which Plaintiffs have copied in this case. (Chen Decl. Ex. 27.)

Echoing Samsung, ST argued in the -526 Investigation that claim 27 of the '338 patent should be construed to cover temporary inhibit and that latch 721 was a two-way latch. The parties presented extensive expert submissions, testimony, proposed fact findings and argument on this issue. (*See* Chen Decl. Ex. 30 at 3.) The ALJ again held for SanDisk, finding that "a person of ordinary skill in the art at the time the '338 patent was filed would conclude that the function of 'means for inhibiting' to be terminating or inhibiting any further programming of the verified cells for the remainder of the programming cycle." (*Id.* at 50.) He also held that "the structure associated with the claim element 'means for inhibiting' is the one-way latch 721 in conjunction with the program circuit with inhibit." (*Id.* at 51.)

The ALJ held that the accused ST products did not infringe claim 27. (*Id.* at 182.) He held that the products did not satisfy the inhibit limitation because they did not include the same one-way latch as latch 721, and "with respect to any alleged structural equivalent to one-way latch 721 in the accused ST products . . . [the circuitry in the ST products] would not perform the inhibiting function in substantially the same way as the disclosed latch 721 of the '338 patent[.]" (*Id.* at 102.)

The ALJ rejected ST's arguments that (i) the "Simko patent" anticipated claim 27, and (ii) claim 27 was obvious based on the "JP100" Japanese Laid-Open Patent. (*Id.* at 109-25.)

The ALJ also rejected ST's argument that SanDisk had defrauded the PTO during the '338 patent's reexamination by not providing the PTO with a 1992 VLSI paper authored by Mr. Mehrotra, Dr. Harari and others (the "VLSI paper") which included a latch drawn the same as latch

8

721. (*Id.* at 128-36.)  The paper was two pages long and did not include the terms "one-way," "two-way" or "latch."  Mr. Mehrotra testified in connection with the -526 Investigation that the latch functioned as a two-way latch in the circuit shown in the VLSI paper.  (Chen Decl. Ex. 17 at 247:7-248:3.)  Rejecting ST's fraud argument, the ALJ held as follows:

> [T]he Examiner had before him in the reexamination proceeding detailed arguments advocating for and against the "one-way latch" claim construction.  The [ALJ] finds no material facts that SanDisk failed to present to the [PTO] that were false nor does he find that SanDisk withheld material information.  Significantly, the record is devoid of any evidence that anyone involved in the reexamination proceeding of the '338 patent had any intent to deceive the [PTO].

(Chen Decl. Ex. 30 at 136.)

The ITC affirmed the ALJ's determination (*id.* at 2), and the Federal Circuit affirmed without written opinion.  *See SanDisk Corp. v. Int'l Trade Comm'n*, 219 F. App'x 984 (Fed. Cir. Mar. 6, 2007).

In the -560 Investigation, the ALJ did not decide any issues concerning interpretation or validity of the '338 patent because he found that SanDisk did not satisfy the "domestic industry" requirement for an ITC action.  (Chen Decl. Ex. 31 at 45-46.)  The evidence obtained and presented on those issues, however, was similar to the records in the -526 Investigation and the Samsung Action.  In particular, SanDisk's witnesses consistently testified that, although the "vast majority" of latches drawn like latch 721 were two-way latches, in the context of the '338 patent latch 721 functioned as a one-way latch.  (Chen Decl. Ex. 38 at 439:14-440:8; 440:25-441:25; Ex. 39 at 3028:10-3030:4; 3160:25-3161:7.)  For example, Mr. Mehrotra testified as follows:

> Q. . . .  You would agree with me, if all you had to look at was this latch, you wouldn't know whether that latch was a one-way latch or a two-way latch, would you?
>
> A. That's right.
>
> Q. In fact, Mr. Mehrotra, the vast majority of all latches that are drawn that way are two-way latches, right?
>
> A. In the typical circuit world, in the logic world, a vast majority of latches drawn that way are two way latches.  But as I've said before, that you really have to look at figure 16 [of the '338 patent] in the context of figure 15 and the rest of the patent, which clearly teaches that programming is to be terminated permanently.

9

1 | (Chen Decl. Ex. 38 at 412:16-20.)[3]

2 |      Concerning the '517 patent, the ALJ in the -560 Investigation noted that it did not include

3 | the "inhibiting means" element of claim 27 of the '338 patent.  (*See* Chen Decl. Ex 31 at 65.)

4 | Rather, claim 1 of the '517 patent claimed "terminating [the] application of appropriate voltage

5 | conditions to individual ones of said plurality of memory cells upon their being determined to have

6 | reached desired threshold level ranges while continuing to apply said appropriate voltage

7 | conditions to others of said plurality of cells until all of the plurality of cells are determined to have

8 | reached their desired threshold level ranges."  (*Id.* at 46.)  Based on extensive expert submissions

9 | and other evidence submitted by the parties, the ALJ held that the asserted claims of the '517

10 | patent were infringed by ST but were invalid in view of prior art, including the "GB 145" UK

11 | patent and the JP100 reference in combination with other references.  (*Id.* at 114-43.)

12 |      Neither party petitioned the ITC to review the ALJ's determination and the ITC determined

13 | in July 2007 not to conduct a review.  (*Id.* at 1-2.)

14 |      ST and SanDisk reached a global settlement in September 2009.  (Chen Decl. Ex. 32.)

15 | **III.**    **LEGAL ANALYSIS AND ARGUMENT**

16 |     **A.**    **The Summary Judgment And *Walker Process* Fraud Standards**

17 |      Summary judgment in SanDisk's favor "is appropriate if no genuine issue of material fact

18 | exists and [SanDisk] is entitled to judgment as a matter of law."  *Sumitomo Mitsubishi Silicon*

19 | *Corp. v. MEMC Elec. Materials, Inc.*, 2007 WL 2318903, at *4 (N.D. Cal. Aug. 13, 2007) (citing

20 | Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *aff'd per curiam*, 301

21 | F. App'x 959 (Fed. Cir. 2008).  SanDisk "bears the initial burden of demonstrating the absence of

22 | any genuine issue of material fact."  *Id.*  "An issue is 'genuine' if the evidence is such that a

23 | reasonable jury could return a verdict for the non-moving party.  An issue is 'material' if its

24 | resolution could affect the outcome of the action."  *Id.* (citations omitted).[4]

25 | [3] Patent claim terms must of course be interpreted in the specific context of the patent disclosure. *See* n. 5, *supra*.

26 | [4] As the Court noted in the Class Cert. Order, although "class determination generally involves

27 | considerations that are enmeshed in the factual and legal issues comprising the plaintiff's [claims]," "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage [and] [m]erits questions may be considered to the extent—but only to the extent—that they

28 | are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."

*(cont'd)*

10

1    Once SanDisk meets its initial burden, the burden shifts to Plaintiffs "to set forth specific

2  facts showing that there is a genuine issue for trial." *Id.* at *5. In responding to SanDisk's motion,

3  Plaintiffs "cannot merely rely on the pleadings"; rather, they "must present specific and supported

4  material facts, of sufficient probative value, to preclude summary judgment." *Id.* Plaintiffs must

5  "identify[] with reasonable particularity the evidence that precludes summary judgment." *Id.*

6  Failure to do so allows the Court to "properly grant summary judgment in favor of [SanDisk]." *Id.*

7    *Walker Process* plaintiffs must prove that the patents in dispute were "obtained through

8  actual fraud upon the PTO." *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1346 (Fed. Cir. 2007).

9  They must submit "independent and clear evidence of deceptive intent together with a clear

10  showing of reliance, *i.e.*, that the patent would not have issued but for the misrepresentation or

11  omission." *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1071 (Fed. Cir. 1998);

12  *see also id.* at 1070 (holding the alleged misrepresentation or omission must "cause the PTO to

13  grant an ***invalid*** patent") (emphasis added); *Dippin' Dots*, 476 F.3d at 1347 (the high standard of

14  materiality in a *Walker Process* case requires plaintiffs to prove that the disputed patents "would

15  not have issued but for the patent examiner's justifiable reliance on the patentee's

16  misrepresentation or omission") (citing *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1364 (Fed.

17  Cir. 1998)).

18    Plaintiffs must prove by "clear and convincing evidence" (i) "but-for" materiality, and (ii)

19  specific intent to deceive. *C.R. Bard*, 157 F.3d at 1369-65; *see also Therasense, Inc. v. Becton,*

20  *Dickinson & Co.*, 649 F.3d 1276, 1290-91 (Fed. Cir. 2011) (en banc) (requiring clear and

21  convincing evidence of both "'a deliberate decision to withhold a known material reference'" and

22  "but-for materiality" of the withheld reference) (citation omitted). "'In a case involving

23  nondisclosure of information, clear and convincing evidence must show that the applicant ***made a***

24  ***deliberate decision*** to withhold a ***known*** material reference.'" *Id.* at 1290 (citation omitted;

25  emphasis added). Specific intent to deceive must be "the single most reasonable inference able to

26  be drawn from the evidence." *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357,

27  _____
   *(cont'd from previous page)*
   (Dkt. 302 at 9 (citations and internal quotations omitted).) The Class Cert. Order thus does not
28  resolve any of the merits issues addressed in SanDisk's summary judgment motion.

SANDISK'S RENEWED MOTION FOR SUMMARY JUDGMENT          CASE NO. CV 10-02787-SBA

1   1366 (Fed. Cir. 2008).  Where "multiple reasonable inferences . . . may be drawn, *intent to deceive*
2   *cannot be found*."  *Therasense*, 649 F.3d at 1290-91 (emphasis added).

3          **B.**    **SanDisk Did Not Commit Fraud During The '338 Patent Reexamination**

4          Plaintiffs allege that SanDisk defrauded the PTO during the '338 patent reexamination by
5   falsely arguing that "claim 27 was patentable because the inhibit function was 'permanent' ... and
6   that a person of ordinary skill in the art would know that latch 721 operates as a 'one-way latch'
7   required for permanent inhibit." (4AC ¶ 48.)  Plaintiffs allege that "[l]atch 721 is a standard, two-
8   way data latch and the inventors of the '338 patent had just published an article—not disclosed to
9   the examiner—that described an identically drawn latch as just that—a standard two-way data
10  latch." (*Id.* ¶ 50.)  The "article" referenced by Plaintiffs is the 1992 VLSI paper authored by Mr.
11  Mehrotra, Dr. Harari, and others.  Plaintiffs cannot prove that SanDisk's argument to the PTO was
12  false or that SanDisk withheld material information by not disclosing the VLSI paper.

13         Although SanDisk did not disclose the VLSI paper to the PTO, it is undisputed that
14  SanDisk actually disclosed the information contained in the VLSI paper that Plaintiffs claim was
15  withheld—*i.e.*, a two-way latch "identically drawn" to latch 721.  SanDisk provided the PTO
16  Examiner all pertinent filings from the Samsung Action.  (Chen Decl. Ex. 6 at 5-6.)  Those
17  materials disclosed that SanDisk's Mr. Mehrotra admitted that "a two-way latch is *drawn the exact*
18  *same way* as latch 721 in Fig. 16."  (Chen Decl. Ex. 10 at 60 & 62 (emphasis added).)  Samsung
19  also presented detailed arguments as to why latch 721 is a two-way latch.  (*See* Chen Decl. Ex. 12.)
20  All of this information was presented to the Examiner during reexamination and he nonetheless
21  determined, based on the extensive evidence and argument submitted by the parties and the '338
22  patent disclosure, that latch 721 was a one-way latch.[5]

23         As this court acknowledged in *Sumitomo*, PTO examiners are "'persons of scientific

---

24  [5]  It is a fundamental tenet of claim construction that claims "'must be read in view of the
25  specification, of which they are a part.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir.
    2005) (en banc) (citations omitted).  In fact, as this Court noted in *Quintal Research Grp., Inc. v.*
26  *Nintendo of Am., Inc.*, 2015 U.S. Dist. LEXIS 93488 (N.D. Cal. July 17, 2015), "[t]he specification
    is the 'single best guide' for construing disputed claim terms." *Id.* at *13 (quoting *Phillips*, 415
27  F.3d at 1315).  Further, where the patent's intrinsic evidence (the claim language, specification,
    and prosecution history) resolves any ambiguity in a disputed claim term, "'it is improper to rely
28  on extrinsic evidence.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583
    (Fed. Cir. 1996)).

1    competence'" in the technical field at issue.  2007 WL 2318903, at *11 (quoting *In re Berg*, 320

2    F.3d 1310, 1315 (Fed. Cir. 2003)).  The Examiner conducting the '338 reexamination was required

3    to thoroughly study and investigate the issues presented by the reexamination, 37 C.F.R. §

4    1.104(a), and he is presumed to have done so.  Because the allegedly material information included

5    in the VLSI paper (*i.e.*, a two-way latch drawn the exact same way as latch 721) "was in fact

6    disclosed to the PTO," SanDisk's failure to submit the VLSI paper "is insufficient to raise a triable

7    fact as to *Walker Process* fraud." *Sumitomo*, 2007 WL 2318903, at *11.[6]  To hold otherwise would

8    "simply assume[] the PTO's incompetence, which is inappropriate." *Id.*

9          Also, because all of the pertinent information was "submitted for the patent examiner to

10   examine [himself], [the examiner] was free to accept or reject" SanDisk's arguments on the one-

11   way latch issue. *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1379 (Fed. Cir. 2008).  Under

12   these circumstances, SanDisk's arguments cannot constitute a material omission or

13   misrepresentation. *See id.*  Rather they "amounted to mere attorney argument and [Federal Circuit]

14   precedent has made clear that an applicant is free to advocate its interpretation of its claims and the

15   teachings of the prior art." *Id.*

16         Plaintiffs also have no evidence that Mr. Mehrotra or SanDisk's patent counsel intended to

17   deceive the PTO, much less the requisite clear and convincing evidence of a deliberate intent to

18   withhold known material references.  Mr. Mehrotra and SanDisk's patent counsel both denied

19   having such an intent, and there is no evidence to the contrary.  (Chen Decl. Ex. 16 at 5-7; Ex. 37 at

20   9, 11-12, 14-19.)  Under these circumstances, it would be improper to simply assume, contrary to

21   the evidence, that an intent to deceive the PTO is "the single most reasonable inference able to be

22   drawn from the evidence." *Star Scientific*, 537 F.3d at 1366.

23         **C.    SanDisk Did Not Withhold Material References From The PTO**

24         Plaintiffs allege that SanDisk also defrauded the PTO during reexamination of the '338

25   patent and prosecution of the '517 patent by not submitting to the PTO the Simko patents and the

26   JP100 patent (each of which allegedly "disclose a 'permanent inhibit' programming system"), the

27   _____

28   [6] 37 C.F.R. § 1.56(a)-(b) expressly provides that "information material to patentabililty" does not include information that is "cumulative to information already of record . . . in the application[.]"

1  "Sparks" patent (which allegedly "discloses bulk erasing and loading of multiple arrays

2  simultaneously"), and the GB 145 patent (which allegedly "disclosed inhibiting the individual

3  erasing of any addressed cell verified to have reached its intended erase state while enabling further

4  erasing in parallel to other addressed cells not verified"). (4AC ¶¶ 56, 59, 64 & 67.) Plaintiffs

5  alleged that each of these references was known to SanDisk and that the Disputed Patents would

6  not have issued if these references had been provided to the PTO. (*Id.* ¶ 41.)

7        Plaintiffs cannot prove these allegations. The Federal Circuit has repeatedly held that

8  "'expert testimony regarding matters beyond the comprehension of laypersons is sometimes

9  essential,' particularly in cases involving complex technology." *Wyers v. Master Lock Co.*, 616

10 F.3d 1231, 1240 n.5 (Fed. Cir. 2010) (quoting *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361,

11 1369-70 (Fed. Cir. 2004)); *see also Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1330

12 (Fed. Cir. 2009). The alleged invalidity of complex technical patents is one area where the Court

13 has held that expert testimony is "critical."

14        For example, in *Allergan*, the district court "declined to independently 'review the prior art

15 references and weigh their import absent the guidance of an expert.'" *Allergan, Inc. v. Barr Labs.,*

16 *Inc.*, 501 F. App'x 965, 971-72 (Fed. Cir. 2013) (citation omitted) (unpublished). The Federal

17 Circuit affirmed:

18        "[E]xpert testimony regarding matters beyond the comprehension of laypersons is
       sometimes essential,' particularly in cases involving complex technology."
19     Obviousness is one area in which expert testimony may be required. In complex
       cases where invalidity on the grounds of obviousness is asserted, "expert testimony
20     may be critical, for example, to establish the existence of certain features in the prior
       art or the existence (or lack thereof) of a motivation to combine references."
21
       The district court appears to have found this case to be "sufficiently complex to fall
22     beyond [the] grasp of ordinary layperson[s]." Indeed, this is not a case where "[t]he
       technology is simple," or where the references are "easily understandable without the
23     need for expert explanatory testimony[.]" Additionally, this is emphatically not a
       case where "[t]he factual inquiries underlying [the] determination of obviousness are
24     not in material dispute." Although in some cases, "the legal determination of
       obviousness may include recourse to logic, judgment, and common sense, in lieu of
25     expert testimony," the district court did not err in finding that common sense and
       logic were not sufficiently illuminating in this case to carry Barr and Sandoz's burden
26     of proving obviousness.

27 *Id.* at 971-972 (citations omitted).

28        Similarly, in *Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1347 (Fed. Cir. 2013), the

                                                    14

defendant unsuccessfully argued invalidity based on the combination of the "Levine" patent and prior art references that "supposedly supply the missing element" claimed in the patented invention. The Court noted that "[e]ven if these references do disclose this element, [the defendant] would still need to show that a person having ordinary skill in the art would have been motivated to combine one of these patents with Levine in order to achieve the claimed invention." *Id.* Nevertheless, the defendant "did not introduce any expert testimony about whether a skilled artisan would have been motivated to combine the various references to achieve the claimed invention," even though it "bore the burden of proving this fact by clear and convincing evidence[.]" *Id.*

On appeal, the defendant argued "that expert testimony was not necessary and that the introduction of the references themselves was sufficient." *Id.* The Federal Circuit rejected this argument because "'expert testimony regarding matters beyond the comprehension of laypersons is sometimes essential,' particularly in cases involving complex technology.'" *Id.* (quoting *Wyers*, 616 F.3d at 1240 n. 5).

> In this case, the technology was complex and the prior-art references were not easily understandable without expert testimony. . . . Expert testimony was required not only to explain what the prior-art references disclosed, but also to show that a person skilled in the art would have been motivated to combine them in order to achieve the claimed invention. [Defendant] provided no such expert testimony.

*Id.* at 1348; *see also Proveris Scientific Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1267 (Fed. Cir. 2008) (holding the district court did not abuse its discretion "in requiring [the party asserting invalidity] to present expert testimony in order to establish invalidity" because the technology was "sufficiently complex to fall beyond the grasp of an ordinary layperson.").[7]

As in *Allergan*, *Alexsam* and *Proveris*, the Disputed Patents and the allegedly invalidating

---

[7] *See also Schumer v. Lab. Computer Sys.*, 308 F.3d 1304, 1315-16 (Fed. Cir. 2002) ("[T]o accept confusing or generalized testimony as evidence of invalidity is improper. The risk is great that the confusion or generality is the result, not of an inarticulate witness or complex subject matter, but of a witness who is unable to provide the essential testimony."); *Monroe Truck Equip., Inc. v. Universal Truck Equip., Inc.*, 2015 WL 4634959, at *12 (W.D. Wis. July 31, 2015) ("Although the plow mounts at issue in this case are not extremely complicated technology, the technology is not so simple that it could be readily understood by a lay juror [and …] the lack of expert testimony on validity would be reason enough to grant" plaintiff's summary judgment motion that the patent-at-issue is not invalid); *Hynix Semiconductor Inc. v. Rambus Inc.*, 2009 WL 112834, at *6 (N.D. Cal. Jan. 16, 2009); *Immersion Corp. v. Sony Computer Entm't Am., Inc.*, 2005 WL 680026, *5 (N.D. Cal. 2005).

1   art concern highly technical issues relating to flash semiconductor technology and circuit design.

2   This case is sufficiently complex to "fall beyond the grasp of an ordinary layperson" so as to

3   require expert testimony on the many complicated issues involved in determining anticipation and

4   obviousness.  This includes the proper construction of the claims of the Disputed Patents, the

5   disclosures and teachings of the asserted prior art, the differences between the claimed inventions

6   and the prior art and application of the prior art to the claims, and the motivation to combine the

7   references to achieve the claimed inventions, all of which must be viewed from the perspective of

8   an artisan ordinarily skilled in semiconductor technology and system design.  *See, e.g., Phillips v.*

9   *AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc) (patent claims are construed from the

10  perspective of one of "ordinary skill in the art"); *Scripps Clinic & Research Found. v. Genentech,*

11  *Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991) (what a prior art reference discloses or teaches is

12  determined from the perspective of one of ordinary skill in the art); *KSR Int'l Co. v. Teleflex Inc.*,

13  550 U.S. 398, 418-19 (2007) (a party asserting obviousness in view of a combination of references

14  has the burden to show that an ordinary skilled person in the relevant field had a reason to combine

15  the elements in the manner claimed).

16          For example, claim 27 of the '338 patent recites at least five separate means-plus-function

17  elements: (1) "means for temporarily storing a chunk of data for programming a plurality of

18  addressed cells," (2) "means for programming in parallel the stored chunk of data into the plurality

19  of addressed cells," (3) "means for verifying the programmed data in each of the plurality of

20  addressed cells with the chunk of stored data," (4) "means for inhibiting further programming of

21  correctly verified cells among the plurality of addressed cells," and (5) "means for further

22  programming and verifying in parallel the plurality of addressed cells and inhibiting programming

23  of correctly verified cells until all the plurality of addressed cells are verified correctly. "  (Chen

24  Decl. Ex 1 at 26:4-54.)  Proof that the omitted references invalidate claim 27 requires, among other

25  things, that Plaintiffs identify for each means-plus-function element, the corresponding structure in

26  the specification or its equivalent and "prove that the corresponding structure—or an equivalent—

27  was present in the prior art." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1299-300

28  (Fed. Cir. 2009) ("At most, the evidence of record supports a finding that some structures that

1  could perform the claimed function existed in the prior art.  Under our precedent, it is clear that

2  such a finding is insufficient.").

3        Plaintiffs elected to eschew claim construction and the aid of technical experts.  (Chen.

4  Decl. Ex. 18 at 7.)  As a result they cannot, as a matter of law, argue the meaning of the Disputed

5  Patents or the omitted references or carry their burden of proving by clear and convincing evidence

6  that the omitted references anticipate or render obvious any claims of the Disputed Patents.

7        Plaintiffs also cannot prove that SanDisk intended to deceive the PTO.  Plaintiffs allege that

8  SanDisk must have known of the references and their materiality because SanDisk's patent

9  prosecution firm maintained a searchable database of prior-art references cited in other

10  prosecutions that included the references.  (4AC at ¶¶ 56-69.)  Plaintiffs have no evidence,

11  however, that the inventors or the prosecuting attorneys searched the database during the

12  prosecution of the Disputed Patents, found any of the references, determined they were material,

13  and then made a deliberate decision not to disclose them to the PTO.  To the contrary, the only

14  evidence on this issue is Mr. Mehrotra's testimony that he was not aware of the references until

15  after the '517 patent issued, and SanDisk's patent attorney's denial that he was aware of the

16  references during the '338 patent reexamination or the '517 patent prosecution.[8]  (*See* Chen Decl.

17  Ex. 16 at 5-7; Chen Decl. Ex. 37 at 9, 11-12, 14-19.)  Plaintiffs have no evidence to the contrary.

18  Accordingly, "the single most reasonable inference able to be drawn from the evidence" is the

19  innocent explanation offered by SanDisk's witnesses, which does not evidence a specific intent to

20  deceive.  *Star Scientific*, 537 F.3d at 1366.  At the very least, there are "multiple reasonable

21  inferences" that may be drawn and "intent to deceive ***cannot*** be found."  *Therasense*, 649 F.3d at

22  1290-91 (emphasis added).

23        D.    **Plaintiffs Cannot Establish The Other Elements Of Their Antitrust Claims**

24        SanDisk is also entitled to summary judgment because Plaintiffs cannot establish other

25  essential elements of their antitrust claims.  *See Walker Process*, 382 U.S. at 174.

26

27  _____
[8] Discussion of the '517 patent is an academic exercise because Dr. Sullivan's antitrust impact and
28  damages opinions are based on SanDisk's enforcement of the '338 patent; he did not analyze
    impact or damages based on the '517 patent. (*See* Chen Decl. Ex. 21 at 249:2-23.)

SANDISK'S RENEWED MOTION FOR SUMMARY JUDGMENT        CASE NO.  CV 10-02787-SBA

1.   **Plaintiffs Cannot Prove They Suffered Antitrust Injury In A Markert Where SanDisk Possessed Market Power Or A Dangerous Probability Of Obtaining Market Power**

Plaintiffs' monopolization and attempted monopolization claims fail because they cannot prove that they suffered antitrust injury in a relevant market in which SanDisk possessed market power or a dangerous probability of obtaining market power.

To pursue a claim under the Clayton Act, "a plaintiff must adequately allege and eventually prove 'antitrust *injury*.'"  *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 371 (9th Cir. 2003).  "Antitrust injury" is an injury of "the type that the antitrust statute was intended to forestall."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters ("AGC")*, 459 U.S. 519, 540 (1983); *see also Glen Holly*, 352 F.3d at 371 ("Antitrust injury is defined not merely as injury caused by an antitrust violation, but more restrictively as 'injury of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.'" (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)); *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1477 (9th Cir. 1997), *aff'd* 525 U.S. 299 (1999).

To meet the antitrust injury requirements of *AGC*, plaintiffs must be participants in the allegedly restrained market.  *See Glen Holly*, 352 F.3d at 372; *Am. Ad Mgmt.*, 190 F.3d at 1057; *Bhan v. NME Hosps., Inc.*, 772 F.2d 1467, 1470 (9th Cir. 1985).

> Antitrust injury requires the plaintiff to have suffered its injury in the market where competition is being restrained.  Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury.

*Am. Ad Mgmt.*, 190 F.3d at 1057; *see also AGC*, 459 U.S. at 538-39 (emphasizing "the central interest [of the Sherman Act] in protecting the economic freedom of *participants* in the relevant market" and denying antitrust standing to plaintiff that was "neither a consumer nor a competitor in the market in which trade was restrained" (emphasis added)).  Establishing the relevant market in which trade was restrained requires proof that the defendant had monopoly power (or a dangerous probability of obtaining market power) in that market.  *See, e.g., Cost Mgmt. Servs., Inc. v. Wash. Nat. Gas Co.*, 99 F.3d 937, 951-52 (9th Cir. 1996).

Here, Plaintiffs contend that the relevant markets are (1) a flash *chip* market, and (2) a final

18

1  flash *products* market that includes six different "submarkets." (4AC ¶ 29.) As to the flash *chip*

2  market, Plaintiffs' claims fail because they cannot prove that they are market participants. As to

3  the flash *product* markets, Plaintiffs' claims fail because they cannot prove SanDisk had market

4  power.

5       It is undisputed that Plaintiffs do not participate in the flash *chip* market. Plaintiffs admit

6  that Ritz and CPM do not participate in that market (Dkt. 270 at 3), and their expert Dr. Sullivan

7  testified that ████████████████████████████████████████████████

8  ████  (Chen Decl. Ex. 21 at 47:12-48:13, 242:22-243:9; Chen Decl. Ex. 33 at 4:17-20, 18:19-

9  19:15, 37:16-21; Ex. 34 at 9:2-23, 13:14-14:2; Ex. 35 at 5:1-23, 8:4-14, 66:10-21; Ex. 36 at 7:24-

10  9:6, 77:14-78:2.) Accordingly, Plaintiffs suffered no injury in that market.[9]

11       Plaintiffs also cannot prove antitrust injury in any flash *product* market because SanDisk is

12  not alleged to have possessed monopoly power or a dangerous probability of market power in any

13  flash *product* market. *See Universal Grading Serv. v. eBay, Inc.*, 563 F. App'x 571, 572 (9th Cir.

14  2014) (unpublished) (dismissing Section 2 claims because plaintiff did not participate in "[t]he

15  only market in which [defendant] was alleged to have a monopoly"). Plaintiffs have no evidence

16  that SanDisk possessed market power in any flash *product* market. Plaintiffs' expert Dr. Sullivan

17  testified at deposition that ████████████████████████████████████

18  ████████████████████████ (Chen Decl. Ex. 21 at 393:13-16 (██████

19  ████████████████████████████████████████████████████

20  ██████); *see also id.* at 418:12-419:5 (████████████████████

21  ██████████████).) Instead, Dr. Sullivan's opinion on market power is

22  ████████████████ (*Id.* at 392:18-19 (██████████████████

23  ██); *see also id.* at 392:22-24.)[10]

---

[9] Indeed, Dr. Sullivan has not ████████████████████
████ (Chen Decl. Ex. 21 at 383:16-21.) SanDisk is, therefore, entitled to summary judgment on
Plaintiffs' individual claims for monopolization and attempted monopolization of the flash *chip*
market because they cannot prove damages.

[10] Citing Dr. Sullivan's September 2014 expert report, the Court stated in its Class Cert. Order that
"Dr. Sullivan specifically identified the relevant market in which he claims there is direct evidence
of SanDisk's market power … [as] 'the market for final flash products[.]'" (Dkt. 302 at 13:3-6
(citing Sullivan Report ¶ 47).) However, Dr. Sullivan made clear at his second deposition, which
took place after class certification briefing, that ████████████████████

*(cont'd)*

1      Plaintiffs try to get around this lack of evidence by arguing that "their theory of monopoly

2  power is that SanDisk raised its rivals' costs in the market for flash products by enforcing the

3  Disputed Patents in the chip market, because chips are critical inputs in flash products." (Dkt. 270

4  at 3 (internal quotations and emphasis omitted).)  The Ninth Circuit and other courts, however,

5  have rejected this type of flow-through theory to establish antitrust injury. *See Am. Ad Mgmt.*, 190

6  F.3d at 1057 (explaining that "[p]arties whose injuries, though flowing from that which makes the

7  defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury")),

8  *see also Meyer v. Qualcomm, Inc.*, 2009 WL 539902, at *8 (S.D. Cal. Mar. 3, 2009). In *Meyer*, the

9  plaintiff, a consumer of UMTS-compliant mobile devices, sued Qualcomm under Sections 1 and 2

10  of the Sherman Act on the grounds that Qualcomm's licensing of patents essential to making

11  UMTS devices on non-FRAND terms raised UMTS chipset manufacturers' costs, which were

12  passed downstream to UMTS device manufacturers, vendors and consumers. *Id*. at *1-3. The

13  court dismissed the plaintiff's Sherman Act claims for lack of antitrust injury because the plaintiff

14  allegedly suffered injury in the downstream market for UMTS devices, not in the upstream market

15  where the allegedly unlawful conduct occurred—the patent and technology market. *Id*. at *8.

16      Here, the allegedly unlawful conduct—SanDisk's enforcement of the Disputed Patents—

17  occurred in the flash *chip* market. Plaintiffs' theory that SanDisk's conduct in that market raised

18  costs for participants in separate, downstream flash *product* markets because the chips are critical

19  inputs in flash *products* is no different than the plaintiff's failed argument in *Meyer*. In *Meyer*,

20  Qualcomm's patents were similarly alleged to have been "essential" to UMTS devices. *Id*. at *2.

21  Nevertheless, the court found no antitrust injury because the market for UMTS devices was not the

22  market in which Qualcomm's allegedly unlawful conduct had occurred. *Id*. at *8.

23      Because Plaintiffs admittedly do not participate in the flash *chip* market they lack antitrust

24  standing to pursue their individual claims for monopolization or attempted monopolization of the

25  flash *chip* market. Furthermore, they cannot pursue individual or class claims for monopolization

26  or attempted monopolization of the flash *product* markets because their alleged injuries in these

27  _____
(cont'd from previous page)

28  ████████████████████████████████████████████████████. (Chen Decl.
Ex. 21 at 393:13-16 and 418:12-419:5.)

SANDISK'S RENEWED MOTION FOR SUMMARY JUDGMENT          CASE NO.  CV 10-02787-SBA

1  markets, although arguably "flowing from" allegedly unlawful conduct, did not occur in the

2  restrained market.  *See Am. Ad Mgmt.*, 190 F.3d at 1057.  Dr. Sullivan's testimony that ████

3  ████████████████████████████████████████████████████████████████ is fatal.

### 2.   Plaintiffs Cannot Prove Causation And Damages

5       Plaintiffs' claims also fail for the further independent reason that they cannot prove causal

6  antitrust injury and damages.

7       Private antitrust plaintiffs seeking damages must prove a causal antitrust injury and

8  damages.  *See* 15 U.S.C. § 15(a); *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir.

9  1995) ("[C]ausal antitrust injury . . . is an element of all antitrust suits brought by private parties.");

10 *City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1373 (9th Cir. 1992) (affirming summary

11 judgment for defendant because plaintiff had "no proper proof of damages at all").[11]  "The greater

12 number of uncertain links in a causal chain, the less likely it is that the entire chain will hold true."

13 *Twin Cities Bakery Workers Health & Welfare Fund v. Biovail, Corp.*, 2005 WL 3675999, at *5

14 (D.D.C. Mar. 31, 2005) (granting summary judgment for antitrust defendant where plaintiffs

15 lacked evidence supporting links in their chain of causation), *aff'd, Meijer, Inc. v. Biovalil Corp.*,

16 533 F.3d 857 (D.C. Cir. 2008).

17      Plaintiffs' causation and damages theory is based on a least four links:

18 **Link 1:**  SanDisk enforced the '338 patent to extract ████████████████████████

19 ████████████████████████████████[12]

20 **Link 2:**  The rival flash *chip* manufacturers ████████████████████████████████

21 ████████████████████████████████████████████

22 **Link 3:**  ████████████████████████████████████████████████

23 ████████████████████

[11] Section 16 of the Clayton Act provides for a private right of action seeking injunctive relief.  15 U.S.C. § 26.  Plaintiffs cannot, however, obtain injunctive relief because they cannot demonstrate a threat of future harm: (1) the Disputed Patents are long expired, and (2) Dr. Sullivan calculates no damages beyond their expiration.  *See O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.").
[12] Plaintiffs also allege that SanDisk obtained the '517 patent by fraud.  Dr. Sullivan has not, however, sought to calculate damages based on ████████████████████████
(*See* Chen Decl. Ex. 21 at 249:2-23.)

21

SANDISK'S RENEWED MOTION FOR SUMMARY JUDGMENT          CASE NO.  CV 10-02787-SBA

1    **Link 4**:  SanDisk responded to █████████████████████████████

2    ███████████████████████████████████

3         Plaintiffs cannot prove causal antitrust injury and damages because they lack sufficient

4    evidence to prove **Links 1** and **2** and their inability to do so undermines **Links 3** and **4**.  *See, e.g.,*

5    *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 672 (D.C. Cir. 1996) (stating that court "need not

6    accept appellants' alleged chain of events if they are unable to demonstrate competent evidence to

7    support each link").

8         Plaintiffs rely on Dr. Sullivan to establish **Link 1.**  Dr. Sullivan opines that SanDisk

9    collected ██████████████████████████████████████████████

10   ████████████████████████.  (Chen Decl. Ex. 20 ¶ 110.)   This opinion is

11   not supported by competent evidence.  (*See* Chen Decl. Ex. 22 ¶¶ 74-89; Ex. 23 ¶¶ 10-14 & n.16.)

12        Dr. Sullivan's calculation that SanDisk ████████████████████

13   ████████████████████████████████████████████████

14   ████████████████████████████████████████████████

15   ████████████████████████████████████████████████

16   █████.  (Chen Decl. Ex. 23 ¶¶ 9-19.)  Each part of Dr. Sullivan's calculation is, however,

17   fundamentally flawed and inadmissible.

18        Dr. Sullivan's opinion that ████████████████████████████

19   ████████████████████████████████████████████████

20   ████████████████████████████████████████████████

21   ████████████████████████████████████████ (Chen Decl. Ex. 23

22   ¶¶ 11, 18.)  Courts routinely exclude damages models when the expert fails to distinguish between

23   harm caused by alleged misconduct and harm flowing from lawful activity.  *See, e.g.*, *Concord*

24   *Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000) (expert's damages model

25   "should not have been admitted . . . because it did not separate lawful from unlawful conduct");

26   *MCI Commc'ns Corp. v. AT&T Co.*, 708 F.2d 1081, 1162 (7th Cir 1982) ("When a plaintiff

27   improperly attributes all losses to a defendant's illegal acts, despite the presence of significant

28   other factors, the evidence does not permit a jury to make a reasonable and principled estimate of

SANDISK'S RENEWED MOTION FOR SUMMARY JUDGMENT          CASE NO.  CV 10-02787-SBA

1   the amount of damage.  This is precisely the type of 'speculation or guesswork' not permitted for

2   antitrust jury verdicts."); *City of Vernon*, 955 F.2d at 1371-73.

3          Here, there is no dispute that

4

5

6                                                                                          (Chen

7   Decl. Ex. 19, Att. D-10; Chen Decl. Ex. 21 at 284:1-286:4; Chen Decl. Ex. 24 §§ 4-5.)

8   Nevertheless, Dr. Sullivan

9

10                                                          . (Chen Decl. Ex. 21 at 286:5-

11  288:9; Chen Decl. Ex. 20 at K-10 & K-11.)  Dr. Sullivan's failure to distinguish between royalties

12  attributable to the '338 patent and royalties attributable to the remainder of SanDisk's many

13  unchallenged patents renders his damages calculation fatally flawed and inadmissible.

14         Dr. Sullivan's opinion that

15                                                                                     . This

16  opinion is based on

17

18                            (Chen Decl. Ex. 20 ¶ 109(a), Attachment K-6; Chen Decl. Ex. 23 ¶ 12.)  Dr.

19  Sullivan fails, however, to account for the fact that

20                                       (*Id.* Ex. 23 ¶ 12.)

21

22                             (Chen Decl. Ex. 19, Atts. C-2, C-3.)

23

24                                          (*Id.*)  They did not,

25  and Dr. Sullivan may not offer an opinion that does not fit the facts of this case.  *See Rebel Oil*, 51

26  F.3d at 1436 ("When an expert opinion is not supported by sufficient facts to validate it in the eyes

27  of the law, or when indisputable record facts contradict or otherwise render the opinion

28  unreasonable, it cannot support a jury's verdict.").

23

1    Dr. Sullivan's interpolation between ███████████████████████████

2    ████████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████ (Chen Decl.

5    Ex. 23 ¶¶ 13-14.)  This ad-hoc approach of ██████████████████

6    ████████████████████████████████████████████████████████

7    ████████████████████████████  *See, e.g., Golden Bridge*

8    *Tech., Inc. v. Apple Inc.*, 2014 WL 2194501, at *6 (N.D. Cal. May 18, 2014) (excluding expert

9    opinion on patent damages because "the case law is clear that mere patent counting and dividing is

10   not enough") .

11       Plaintiffs cannot prove **Link 2** because they have no competent evidence that ██████████

12   ████████████████████████████████████████████████████████████████

13   Plaintiffs have not (1) deposed any flash *chip* manufacturer that paid royalties to SanDisk, (2)

14   obtained accounting data from any flash *chip* manufacturer that paid royalties to SanDisk, or (3)

15   disclosed the identity of any *fact* witness who will testify that a flash *chip* manufacturer even

16   considered royalties it paid to SanDisk when setting flash *chip* prices.  Instead, Plaintiffs rely on

17   Dr. Sullivan's unfounded assumption that ████████████████████████████████

18   █████████████████████████████████████ This is insufficient

19   to establish **Link 2**. *See Virgin Atl. Airways Ltd. v. British Airways PLC*, 69 F. Supp. 2d 571, 579

20   (S.D.N.Y. 1999), *aff'd* 257 F.3d 256 (2d Cir. 2001) ("'[E]xpert testimony without . . . a factual

21   foundation cannot defeat a motion for summary judgment.'"); *In re Fla. Cement & Concrete*

22   *Antitrust Litig.*, 278 F.R.D. 674, 685 (S.D. Fla. 2012) (excluding pass through opinion  (citing *In re*

23   *Fresh Del Monte Pineapples Antitrust Litig.*, 2008 WL 5661873, at *6 (S.D.N.Y. Feb. 20, 2008)

24   (rejecting damages opinion where the expert did not perform any detailed empirical analysis of

25   pass through, used limited data, and assumed uniform pass through rate)).

26       SanDisk does not contend that Dr. Sullivan assumed an overall pass-through rate of 100%.

27   As the Court correctly noted in its Class Cert. Order, "he calculated the overall pass-through rate to

28   be 80.1% …."  (Dkt. 302 at 18.)  Dr. Sullivan, however, assumed a ███████████████

1  ███████████████████████████████  Indeed, at his second deposition, taken after

2  class certification briefing, Dr. Sullivan testified that his analysis begins with the conclusion that

3  there is a ████████████████████████████████████████████

4  ████████████████████████████  (Chen Decl. Ex. 21 at 342:24-

5  343:19.)  There is no evidence or analysis supporting this opinion.  Plaintiffs have no testimony or

6  accounting data indicating that ███████████████████████████████████████

7  ███████████████████████████████████████████

8      Plaintiffs may not avoid summary judgment on the basis of an expert's unsupported

9  conclusion.  *See Virgin*, 69 F. Supp. 2d at 579-80 (finding expert's conclusion that incentive

10  agreements resulted in increased British Airways flights inadequate where there was no evidence

11  of increased flights); *Rebel Oil*, 51 F.3d at 1436 ("Expert testimony is useful as a guide to

12  interpreting market facts, but it is not a substitute for them.").  This is particularly true where, as

13  here, the record evidence is contrary to the expert's opinion. Dr. Sullivan's opinion that flash

14  ███████████████████████  is contrary to the data in his report showing that

15  ████████████████████████████████████████████

16  ████  (Chen Decl. Ex. 20, Att. M-14 (

17  ████████████████████████████████████████████

18  ████████████████████████  ); Chen Decl. Ex. 23 at Ex. 2.)

19      Dr. Sullivan's subsequent opinions regarding **Link 3** and **Link 4**—including his calculation

20  of an ████████████████████████  and calculation of damages—are fatally flawed because

21  they depend on his fatally flawed, unsupported, and inadmissible opinions that SanDisk collected

22  ████████████████████████████████████████████

23  ████████████████████████

24  **IV.   CONCLUSION**

25      For the foregoing reasons, SanDisk respectfully requests that the Court grant SanDisk's

26  motion for summary judgment and dismiss the 4AC in its entirety.  Alternatively, SanDisk requests

27  that the Court grant partial summary judgment as to those facts that are not genuinely in dispute.

28

25

1    DATED:  October 16, 2015         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

2

3                                 By: _____ */s/ James P. Schaefer*
                                              JAMES P. SCHAEFER

4

5                                     Attorneys for Defendant,
                                    SANDISK CORPORATION

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SANDISK'S RENEWED MOTION FOR SUMMARY JUDGMENT        CASE NO.  CV 10-02787-SBA